HAMMERMAN & GAINER, INC., et al., Appellants,

v.

Bob BULLOCK, Comptroller of Public Accounts of the State of Texas, Appellee.

No. 3-89-158-CV.

Court of Appeals of Texas, Austin.

June 20, 1990.

Catherine Fryer, Austin, for appellants.

Jim Mattox, Atty. Gen., Christine Monzingo, Asst. Atty. Gen., Austin, for appellee.

Before POWERS, JONES and EARL W. SMITH *, JJ.

JONES, Justice.

Appellants, a group of independent insurance claims adjusters, brought this declaratory judgment action under the Administrative Procedure and Texas Register Act (APTRA), Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 12 (Supp.1990), seeking to have declared invalid certain rules promulgated by the Comptroller of Public Accounts relating to the taxation of insurance services. The Comptroller interposed a plea to the jurisdiction, which the trial court denied. Appellants and the Comptroller both moved for summary judgment. The trial court granted the Comptroller's motion and denied appellants' motion, thereby upholding the validity of the challenged rules. We will affirm the trial court's judgment.

■ We will first address a cross-point in which the Comptroller argues that the trial court was without jurisdiction to hear this case for the following reasons: (1) the State may not be sued without its consent; (2) Chapter 112 of the Texas Tax Code establishes a procedure allowing a taxpayer to file a tax protest suit after first paying the taxes claimed to be due, thereby providing an exclusive waiver of sovereign immunity in tax matters for taxpayers who choose to contest the validity of a tax statute, rule, or audit; Tex.Tax Code Ann. §§ 112.001–.156 (1982 & Supp.1990); (3) appellants are taxpayers; (4) appellants did not comply with the applicable provisions of the Tax Code in filing this suit; and (5) therefore, the trial court had no jurisdiction to hear this suit against the Comptroller in his official capacity. In support of its argument, the Comptroller cites *Robinson v. Bullock*, 553 S.W.2d 196 (Tex.Civ.App.1977, writ ref'd n.r.e.), *cert. denied*, 436 U.S. 918, 98 S.Ct. 2264, 56 L.Ed.2d 759 (1978); *Dan Ingle, Inc. v. Bullock*, 578 S.W.2d 193 (Tex. Civ.App.1979, writ ref'd); and *Motorola, Inc. v. Bullock*, 586 S.W.2d 706 (Tex.Civ. App.1979, no writ).

We conclude that the trial court had jurisdiction. When the judgment in this suit was signed, the Tax Code's waiver of sovereign immunity was not exclusive. *See Cobb v. Harrington*, 190 S.W.2d 709, 713–14 (Tex.1945).[1] In *Cobb*, the Texas Supreme Court held that the protest-suit sections of the Tax Code did not provide an exclusive waiver of sovereign immunity and that a taxpayer could test the validity of a tax statute by a declaratory judgment action. *Compare Cowan Boat Transfer, Inc. v. Texas Employment Commission*, 789 S.W.2d 405 (Tex.App.—Austin 1990, writ pending) (refund suits under Texas Unemployment Compensation Act, Tex. Rev.Civ.Stat.Ann. art. 5221b–12(j)(2) (1987), are expressly made exclusive remedy). A declaratory judgment action under section 12 of APTRA is similar to the type of suit approved in *Cobb*. Accordingly, we conclude that appellants' suit was not precluded by the Tax Code's protest-suit remedies.

In the cases cited by the Comptroller, the taxpayers sought, among other things, to recover taxes paid. In a suit to obtain such relief, compliance with the Tax Code requirements is mandatory. In the present case, however, appellants did not attempt to recover taxes paid; therefore, *Cobb* con-

---

* Before Earl W. Smith, Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex.Gov't Code Ann. § 74.003 (1988).

**1.** Since the judgment in this suit was signed, the legislature has amended the Tax Code to prohib-

it the use of declaratory judgments to contest the validity of a tax. *See* Tex.Tax Code Ann. § 112.108 (Supp.1990).

trols. The Comptroller's cross-point is overruled.

■ We will now address appellants' points of error, all of which attack the trial court's judgment upholding the validity of the Comptroller's rules regarding the taxation of insurance services.

In 1987 the legislature passed a bill imposing a sales tax on a variety of services, including insurance services. Tex.Tax Code Ann. §§ 151.005, 151.0101, 151.051 (1982 & Supp.1990). The statute defines "insurance service" as follows:

(a) "Insurance service" means insurance loss or damage appraisal, insurance inspection, insurance investigation, insurance actuarial analysis or research, *insurance claims adjustment* or claims processing, or insurance loss prevention service.

(b) "Insurance service" does not include *insurance coverage for which a premium is paid* or commissions paid to insurance agents for the sale of insurance or annuities.

Tex.Tax Code Ann. § 151.0039 (Supp.1990) (emphasis added).

Pursuant to statutory authorization, the Comptroller adopted administrative rules to implement the tax. Texas Tax Code Ann. § 111.002(a) (Supp.1990). One such rule defines insurance claims adjustment or claims processing as "[a]ny activities to supervise, handle, investigate, pay, settle, or adjust claims or losses." 34 Tex.Admin. Code § 3.355 (West Nov. 1, 1989). The same rule also states that insurance services do not include "insurance coverage for which a premium is paid." Subsequently, the Comptroller required appellants to report and pay sales tax on all receipts from claims adjusting services performed for insurance carriers.

The thrust of appellants' argument is that insurance claims adjustment services, when rendered to insurance carriers whose rates and policies are regulated by the State Board of Insurance, constitute "coverage for which a premium is paid" and therefore fall within the statutory "exemption" of section 151.0039(b). Appellants' bases for this argument are that the State Board of Insurance requires insurers to bear the cost of adjustment services and considers the cost of such services when setting and approving insurance rates. Thus, appellants argue that the consumer pays for adjustment costs when he pays the premium for the policy, i.e., claims adjustment services are part of insurance coverage for which a premium is paid.

The Comptroller, on the other hand, takes the position that the exclusion from taxation provided by subsection (b) of section 151.0039 applies to transactions and services different from those listed in subsection (a). The Comptroller argues that subsection (b) merely clarifies that transactions in which a consumer pays a premium to an insurance carrier, or in which a carrier pays a commission to an agent, are exempt from taxation. Therefore, the transaction in which a carrier pays an independent insurance adjuster for adjustment services is not tax exempt.

Our review of the trial court's summary judgment that the Comptroller's rule is valid must focus on the language of the statute: if section 151.0039 is properly construed as imposing a tax on all third-party claims adjustment services sold to insurers, then Rule 3.355 is valid; if the statute is properly construed as exempting such services when sold to insurers under policies approved by the State Board of Insurance, then the rule is invalid. *See Gerst v. Oak Cliff Sav. & Loan Ass'n*, 432 S.W.2d 702, 706 (Tex.1968). We must examine the rule to see if it harmonizes with the statute, because an administrative agency in promulgating rules is required only to make its rules consistent with statutory and constitutional authority. *Id.*

The difficulty in interpreting the scope of section 151.0039 lies in interpreting the definition of "insurance coverage for which a premium is paid." In construing a statute, a court may always consider the administrative construction of the statute. Tex. Gov't Code Ann. § 311.023(6) (1988). In the present case, the legislature expressly provided that the Comptroller shall have "exclusive jurisdiction" to interpret the scope of the phrase "insurance services."

Tex.Tax Code Ann. § 151.0101(b) (Supp. 1990). Construing sections 151.0101(b) and 151.0039 together, we conclude that if the Comptroller's interpretation of the scope of insurance services is reasonable, in that it harmonizes with the statute, then this Court is bound to accept his interpretation regardless of the possible existence of other reasonable interpretations. *See Bullock v. Hewlett–Packard Co.*, 628 S.W.2d 754, 756 (Tex.1982).

Insurance "coverage" is susceptible to a range of interpretations. Generally, it can be defined as the "amount and extent of risk covered by insurer." Black's Law Dictionary 330 (5th ed. 1979). Construed most broadly, the phrase "extent of risk" might include a multitude of costs borne by an insurer, including defense costs and possibly even the cost of adjustment services. However, "extent of risk" can also be reasonably construed more narrowly to include only the risk of liability. Appellants argue that the more narrow construction of "coverage," adopted by the Comptroller, renders subsection (b) of section 151.0039 mere surplusage. The basis of this argument is the rule of statutory construction that the exception of a particular thing from the operation of a statute indicates that, in the absence of the exception, the excepted matter would have been within the purview of the general provision. Because insurance "coverage" and agents' commissions are not included in the definition of "insurance services" under subsection (a), appellants argue that subsection (b) must have been intended to exempt something more than these items; i.e., it must exempt something included within subsection (a).

We conclude that the Comptroller's interpretation of the statute does not negate the effect of subsection (b). Under the Comptroller's interpretation, subsection (b) is not merely an exception to subsection (a); rather, it is an affirmative declaration of what is *not* included in the definition of insurance services. Although the definition in subsection (a) is narrowly drawn, it is not unreasonable to conclude that the legislature's purpose in enacting subsection (b) was to prevent any attempted broadening of the definition to include the items mentioned in subsection (b). As such, the provisions of subsection (b) serve as an interpretative, explanatory section and not as an exception to an otherwise all-encompassing provision. Legislatures are permitted to define terms not only positively, specifying what they include, but also negatively, specifying what they do not include. *See, e.g., DeBartolo v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 582–83, 108 S.Ct. 1392, 1401, 99 L.Ed.2d 645 (1988).[2]

In addition, the Attorney General of Texas recently addressed precisely the same issue raised by this suit and reached the same conclusion we do:

We think that the exclusion of "coverage for which a premium is paid" from the definition of "insurance service" simply means that a transaction that consists of the payment of a premium for insurance coverage is not a taxable event. It does not mean that any expenditure for which the premium is ultimately used by the insurer is not a taxable event.

Op.Tex.Att'y Gen. No. JM–1016 (1989). Although not binding on the courts, attorney general's opinions are often said to carry "great weight." *Cf. Plainview Indep. School Dist. v. Edmonson Wheat Growers, Inc.*, 681 S.W.2d 299, 302 (Tex.App. 1984, writ ref'd n.r.e.) ("highly persuasive value"); *King v. Jefferson County Water Control & Improvement Dist. No. 7*, 281

---

2. We note that if, as asserted by appellants, subsection (b) were a true exemption from the tax-imposing definition of subsection (a), appellants would assume a heavy burden in seeking to bring themselves within its scope:

Statutory exemptions from taxation are subject to strict construction since they are the antithesis of equality and uniformity and because they place a greater burden on other taxpaying businesses and individuals. [Cita-

tions omitted.] An exemption cannot be raised by implication, but must affirmatively appear, and all doubts are resolved in favor of [the] taxing authority and against the claimant. Simply stated, the burden of proof is on the claimant to clearly show that it comes within the statutory exemption.

*Bullock v. National Bancshares Corp.*, 584 S.W.2d 268, 271–72 (Tex.1979).

S.W.2d 185, 188 (Tex.Civ.App.1955, writ ref'd) ("due weight and consideration").

Because we conclude that the Comptroller's interpretation of the statute is reasonable, we hold that the trial court did not err in granting the Comptroller's motion for summary judgment and denying appellants' motion. The judgment of the trial court is affirmed.

POWERS, J., not participating.