Before Chief Justice Rose and Justices Puryear, Pemberton, Goodwin, Field, and Bourland
David Puryear, Justice *851 The Comptroller of Public Accounts (the "Comptroller") assessed franchise taxes against EBS Solutions, Inc. ("EBS"). Although EBS paid some of the taxes that were due, EBS did not pay the full amount before filing a suit seeking to recover the amount of taxes paid and seeking injunctive relief. See Tex. Tax Code §§ 112.052., .101. In response, the Comptroller filed a plea to the jurisdiction asserting that the suit should be dismissed because EBS did not comply with "the statutory jurisdictional requirements" before filing suit. After considering the parties' arguments regarding the plea, the district court denied the plea to the jurisdiction. The Comptroller appeals the district court's order denying the plea. See Tex. Civ. Prac. & Rem. Code §§ 51.014(a)(8) (authorizing interlocutory appeal of trial court ruling granting or denying "a plea to the jurisdiction by a governmental unit"), 101.001(3) (defining term "[g]overnmental unit"). We will reverse en banc the district court's order and remand for further proceedings. See Tex. R. App. P. 41.2 (allowing appellate courts to consider case en banc).
STATUTORY FRAMEWORK
Before delving into the background or the parties' arguments, we provide a review of the significant changes that have occurred in the applicable tax statutes in order to help frame the issues on appeal. At the outset, we note that the outcome of this appeal is compelled by prior rulings of this Court that have determined that a provision of the Tax Code is unconstitutional. Those determinations were guided by supreme court precedent that this Court may not ignore. In addition, although our invalidation of the Tax Code provision occurred nearly twenty years ago, no legislative action has been taken to address the constitutional defects, and the supreme court has not addressed the issue or mentioned our invalidation of the statute. Accordingly, the unconstitutional provision still appears in the Tax Code unaltered. This opinion endeavors to provide some guidance regarding how this unusual legal landscape must be traversed.
The issues presented in this appeal concern the requirements that must be met before challenging the assessment of taxes. Under common law, there was no right to sue to protest revenue laws. R Commc'ns v. Sharp , 839 S.W.2d 947, 952 (Tex. App.-Austin 1992) (" R Commc'ns I "), rev'd , 875 S.W.2d 314 (Tex. 1994) (" R Commc'ns II "). By enacting various provisions of the Tax Code, the legislature waived sovereign immunity for the following three types of taxpayer suits: protest suits, see *852 Tex. Tax Code §§ 112.051 -.060, suits seeking injunctive relief, id. §§ 112.101-.108, and refund suits, id. §§ 112.151-.156. Only the first two types of suits bear upon the issues in this appeal.
For tax-protest suits, "a person who is required to pay a tax" but wants to challenge the assessed tax must "pay the amount claimed by the state" and submit a written protest with the payment. Id. § 112.051 ; see also id. § 112.052 (stating that protest suit may seek recovery for, among other things, franchise taxes paid under protest). In addition to tax-protest suits, a taxpayer may seek a restraining order or an injunction prohibiting "the assessment or collection of a tax." Id. § 112.101(a). However, before a taxpayer may seek an injunction, he must comply with certain statutory criteria. See id. § 112.101. Of significance here, the taxpayer must either pay all "taxes, fees, and penalties then due" or file a bond "in an amount equal to twice the amount of the taxes, fees, and penalties then due and that may reasonably be expected to become due during the period the order or injunction is in effect." Id. § 112.101(a).
In the portion of the Tax Code governing injunctive suits, the legislature also chose to include section 112.108, which stated when it was first enacted that with the exception of the restraining order or injunction discussed above, "a court may not issue a restraining order, injunction, declaratory judgment, writ of mandamus or prohibition, order requiring the payment of taxes or fees into the registry or custody of the court, or other similar legal or equitable relief against the state or a state agency relating to the applicability, assessment, collection, or constitutionality of a tax or fee covered by this subchapter or the amount of the tax or fee due." See Act of May 19, 1989, 71st Leg., R.S., ch. 232, § 16, sec. 112.108, 1989 Tex. Gen. Laws 1070, 1074 (amended 1995).
After the enactment of section 112.108, a taxpayer (R Communications) sought to challenge a tax assessment "without first paying the taxes allegedly owed" by, among other things, pursuing a declaratory-judgment action. R Commc'ns I , 839 S.W.2d at 949. "The Comptroller filed pleas to the jurisdiction, noting [R Communications'] failure to pay the taxes assessed, ... its failure to meet the prerequisites for seeking injunctive relief in a tax-collection proceeding," and "the statutory prohibition against declaratory judgments in tax matters." Id. The trial court dismissed the suit for lack of subject-matter jurisdiction. Id. On appeal to this Court, R Communications argued, among other things, that the prepayment requirements and the prohibition against declaratory relief codified in section 112.108 were unconstitutional. Id. In our opinion, we determined that the prepayment requirement and the restrictions on declaratory-judgment actions found in section 112.108 "do not offend the open courts provisions of our state constitution." Id. at 953, 955 ; see Tex. Const. art. I, § 13 (stating that "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law"); see also Central Appraisal Dist. of Rockwall Cty. v. Lall , 924 S.W.2d 686, 689 (Tex. 1996) (explaining that open-courts provision guarantees following: "1) courts must actually be open and operating; 2) the Legislature cannot impede access to the courts through unreasonable financial barriers; and 3) the Legislature may not abrogate well-established common law causes of action unless the reason for its action outweighs the litigants' constitutional right of redress"). Accordingly, we affirmed the trial court's dismissal of R Communications *853 suit. R Commc'ns I , 839 S.W.2d at 956.
R Communications appealed our determination to the supreme court and argued, among other things, that section 112.108 violated the open-courts provision of the Texas Constitution. R Commuc'ns II , 875 S.W.2d at 315. In its opinion, the supreme court explained that the "right to prompt, unimpeded declaratory relief was terminated by the enactment in 1989 of section 112.108" but that prior to the enactment of 112.108, "taxpayers ha[d] been able to seek" a "declaratory judgment" without having "satisfied the prepayment provisions." Id. at 316. Ultimately, the court determined that the trial court had "jurisdiction to hear" R Communications' suit "for declaratory relief" and remanded the case to the trial court. Id. at 318-19.
When reaching its ruling, the supreme court did not expressly identify the scope of declaratory relief that taxpayers may use in the tax setting, but the prior cases relied on by the supreme court in its opinion in R Communications II help provide guidance regarding the nature of the type of declaratory relief sanctioned by the court. First, the supreme court cited a prior opinion by this Court, see id. at 316, in which we determined that a taxpayer could challenge the validity of "certain rules promulgated by the Comptroller ... relating to the taxation of insurance services" under the predecessor to the Administrative Procedure Act, see Hammerman & Gainer, Inc. v. Bullock , 791 S.W.2d 330, 331 (Tex. App.-Austin 1990, no writ). In reaching that result, this Court explained that for taxpayers who seek "to recover taxes paid, ... compliance with the Tax Code requirements is mandatory " but that taxpayers who do not seek to recover taxes that they paid and instead seek to challenge the validity of a Comptroller rule may do so without complying with the requirements of the Tax Code, including the prepayment obligations. Id. (emphasis added).
The supreme court in R Communications II then pointed to one of its prior opinions. 875 S.W.2d at 316 (citing Cobb v. Harrington , 144 Tex. 360, 190 S.W.2d 709 (1945) ). In Cobb , taxpayers who did not pay a tax assessment sought a declaration under the Uniform Declaratory Judgments Act regarding whether a statute imposing a duty to pay occupation taxes on individuals doing business as motor carriers applied to them. Id. at 710. When determining that the declaratory-judgment action may be pursued, the supreme court explained that the suit was "not a suit to impose liability upon the State" and was not "one for the recovery of money from the State or in which a judgment obtained would be satisfied by the payment out of funds in the State treasury." Id. at 712. Instead, the supreme court noted that the "action is for the purpose of obtaining a judgment declaring that respondents are not motor carriers as defined by the tax statute, and that [the Comptroller], in endeavoring to compel respondents to pay the tax, [is] acting wrongfully and without legal authority." Id. Moreover, the court explained that the availability of attacking the assessment through a protest suit did not preclude a declaratory-judgment action because of the unique nature of that remedy. Id. at 713. In addition, the court pointed to the language of the Declaratory Judgments Act, ids="2336685,10205070" index="30" url="https://cite.case.law/sw2d/190/709/">id. at 714, which currently allows "[a] person ... whose rights, status, or other legal relations are affected by a statute" to "have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights, status, or other legal relations thereunder," see Tex. Civ Prac. & Rem. Code § 37.004.
*854 Finally, in R Communications II , the supreme court referred to another opinion by this Court in which we explained that the enactment of section 112.108 prohibited a taxpayer from seeking declaratory relief pertaining to a Comptroller's Rule "concerning the classification as gross receipts of a bank's receipts from dividends and interest." See First State Bank of Dumas v. Sharp , 863 S.W.2d 81, 82, 83 (Tex. App.-Austin 1993, no writ). At the time that our prior opinion was issued, section 112.108 had not been declared unconstitutional. See ids="9994874" index="32" url="https://cite.case.law/sw2d/863/81/#p82">id. at 83. In our opinion, we noted that before section 112.108 went into effect, cases like Hammerman and Cobb stood "for the proposition that the protest-suit provisions of the Tax Code did not provide the exclusive remedy to challenge Comptroller's actions under the Tax Code when relief other than a refund of taxes was sought." Id. (emphasis added).
With these and other cases in mind, the supreme court noted in R Communications II that the State had not "shown that the complete prohibition of prepayment declaratory relief contained in section 112.108 reasonably serve[d] any governmental interest." 875 S.W.2d at 317. In addition, the court reasoned that "[t]he combination of the prepayment provisions contained in sections 112.051 and 112.101, the ban on declaratory judgments in section 112.108, and the inadequacy of the remedy of awaiting the filing of a collection suit by the Comptroller mean that a taxpayer is financially restricted in its ability to get to court." Id. at 317-18. Accordingly, the court determined "that conditioning a taxpayer's right to initiate judicial review on the payment of taxes or the posting of a bond equal to twice the alleged tax obligation violates the open courts mandate of the Texas Bill of Rights" and that "section 112.108 is unconstitutional and void." Id. at 314, 318. However, the court also explained that it was not necessary "to invalidate the State's entire tax collection scheme" because in the absence of section 112.108, taxpayers have the ability "of obtaining timely access to the courts that would not impinge upon the State's interest in securing timely collection of taxes" through pursuit of the type of declaratory-judgment action allowed before the enactment of section 112.108, presumably by way of the Administrative Procedure Act or the Declaratory Judgments Act.[1] Id. at 318.
In a subsequent supreme court case, the Comptroller "assessed ... taxes and penalties against Weck for failing to pay taxes due under the Controlled Substances Tax Act," and the taxpayer did not comply with the prepayment requirements for tax suits listed in the Tax Code and instead filed suit seeking declarations "that the Controlled Substances Tax Act is unconstitutional" and "that section 112.051 of the Tax Code, which requires that the contested tax be paid before a taxpayer may seek judicial review of the assessment, is unconstitutional." Weck v. Sharp , 884 S.W.2d 153, 154 (Tex. 1994). When discussing the effect of its prior ruling in R Communications II on that subsequent case, the court noted that R Communications, like Weck, challenged the constitutionality of the prepayment obligation under section 112.051 *855 but that it was unnecessary to void the statutes imposing prepayment obligations ( sections 112.051 and 112.101 ) because its invalidation of section 112.108 allowed R Communications to seek "judicial review of tax liability by means of a declaratory action." Id. Similarly, the court concluded in Weck that due to the invalidation of section 112.108, Weck had the means to challenge "the constitutionality of his tax assessment" through a prepayment declaratory-judgment action. Id.
In response to the opinions by the supreme court deciding that section 112.108 was constitutionally deficient, the legislature amended the language of that provision. See Act of May 24, 1995, 74th Leg., R.S., ch. 579, § 13, sec. 112.108, 1995 Tex. Gen. Laws 3374, 3377 (current version at Tex. Tax Code § 112.108 ). When amending the provision, the legislature retained the original language prohibiting, among other things, declaratory challenges to the imposition of taxes but added additional language seemingly permitting taxpayers to seek relief regarding the imposition of taxes without having to satisfy the prepayment requirements of section 112.051 (protest suit) or 112.101 (injunctive relief) if the taxpayer files an "oath of inability to pay" and if the trial court "finds that such prepayment would constitute an unreasonable restraint on the party's right of access to the courts." Id.[2]
Following the amendment to section 112.108, the supreme court addressed the constitutionality of a similar provision of the Tax Code requiring prepayment but excusing prepayment before challenging a property-tax assessment in certain circumstances. See Lall , 924 S.W.2d 686. In particular, a former version of section 42.08 of the Tax Code required a property owner to pay "the amount of taxes due on the portion of the taxable value of the property that is not in dispute or the amount of taxes imposed on the property in the preceding year, which ever is greater," or "the amount of taxes due on the property under the order from which the appeal is taken" before appealing the assessment. See Act of May 26, 1979, 66th Leg., R.S., ch. 841, § 1, sec. 42.08(b), 1979 Tex. Gen. Laws 2217, 2310, amended by Act of May 28, 1989, 71st Leg., R.S., ch. 796, § 43, sec. 42.08(b), 1989 Tex. Gen. Laws 3591, 3604 (current version at Tex. Tax Code § 42.08(b) ). In addition, like the amendment to section 112.108, the property-tax provision excused the prepayment obligations discussed above if a party filed "an oath of inability to pay the taxes at issue" and "if the court, after notice and hearing, finds that such prepayment would constitute an unreasonable restraint on the party's *856 right of access to the courts." See Act of May 24,1979, 66th Leg., R.S., ch. 841, § 1, sec. 42.08(d), 1979 Tex. Gen. Laws 2217, 2310, amended by Act of May 24, 1995, 74th Leg., R.S., ch. 579, § 12, sec. 42.08(d), 1995 Tex. Gen. Laws 3374, 3376 (current version at Tex. Tax Code § 42.08(d) ).
In its opinion, the supreme court determined that the provision requiring the prepayment of "the amount of taxes imposed on the property in the preceding tax year" was unconstitutional and noted that it had previously invalidated several statutes requiring taxpayers to prepay "as a condition for judicial review." See Lall , 924 S.W.2d at 690. Further, the supreme court explained that "the Legislature could have achieved its goal of assuring prompt payment by providing that ad valorem taxes are due and collectible on the delinquency date, without conditioning the right of judicial review on timely payment," and that "[t]hrough penalties, collection efforts[,] and the mere threat of involuntary collection, the Legislature could have assured a steady stream of income for local governments and deterred taxpayers from using judicial review as a mere delaying tactic." Id. at 691. Importantly, the supreme court determined that the inability-to-pay exception did not cure the constitutional defect in the prepayment provision because the prepayment requirement "imposes an unreasonable financial barrier to court access ... regardless of a taxpayer's ability to pay." Id. at 692 ; see also Texas Ass'n of Bus. v. Texas Air Control Bd. , 852 S.W.2d 440, 450 & n.18 (Tex. 1993) (determining that prepayment obligations of another statute "facially violate[d] our open courts provision" and explaining that fact that "the affected parties may be able to afford prepayment is irrelevant" because "[t]he guarantee of constitutional rights should not depend on the balance in one's bank account").
After the supreme court's decision in Lall , this Court had occasion to address the constitutionality of the amendment to section 112.108. See Rylander v. Bandag Licensing Corp. , 18 S.W.3d 296 (Tex. App.-Austin 2000, pet. denied). In Bandag , a taxpayer, Bandag Licensing Corporation, sought declaratory relief regarding taxes assessed by the Comptroller that were paid under protest without filing an "oath of indigency." See id. at 298, 303. The trial court granted Bandag declaratory relief, including declaring section 112.108 unconstitutional. Id. at 303. Relying on the analysis from Lall addressing a similarly worded inability-to-pay exception and on other cases, this Court reasoned that "the availability of an indigency proceeding ha[d] no bearing on the issue of constitutionality." Id. at 303-04. In other words, this Court concluded that "the indigency provision of section 112.108 [was] irrelevant to the issue of whether that section constitutes an unreasonable financial barrier to access to the courts." Id. at 304. Accordingly, this Court upheld the trial court's determination that the amended version of section 112.108 was unconstitutional and explained that "the entirety of section 112.108" was "an unreasonable financial barrier against access to the courts." Id. at 304, 305.
Following our determination in Bandag , we have repeatedly reaffirmed our holding in Bandag invalidating section 112.108. See Combs v. Texas Small Tobacco Coal. , 440 S.W.3d 304, 310 (Tex. App.-Austin 2014), rev'd on other grounds sub nom. Hegar v. Texas Small Tobacco Coal. , 496 S.W.3d 778 (Tex. 2016) ; Richmont Aviation, Inc. v. Combs , No. 03-11-00486-CV, 2013 WL 5272834, at *5-6 (Tex. App.-Austin Sept. 12, 2013, pet. denied) (mem. op.); FM Express Food Mart, Inc. v. Combs , No. 03-12-00144-CV, 2013 WL 1149551, at *6 n.6 (Tex. App.-Austin Mar. 15, 2013, no pet.)
*857 (mem. op.); Local Neon Co. v. Strayhorn , No. 03-04-00261-CV, 2005 WL 1412171, at *6 n.6 (Tex. App.-Austin June 16, 2005, no pet.) (mem. op.). Despite the holding from Bandag and our subsequent cases embracing that determination, the legislature has made no modification to the language of section 112.108. See Tex. Tax Code § 112.108. Similarly, the supreme court has made no comment on our invalidation of section 112.108 despite the fact that the supreme court has discussed section 112.108 in two opinions issued after Bandag .
In the first supreme court case issued after Bandag , a taxpayer, Allcat Claims Services, L.P., paid franchise taxes under protest and then filed an original proceeding with the supreme court seeking, among other things, a refund of the franchise taxes and a declaration that the franchise tax was unconstitutional "to the extent it taxes partnership income allocable to its natural-person partners." In re Allcat Claims Serv., L.P. , 356 S.W.3d 455, 459 (Tex. 2011) (orig. proceeding). In that case, the supreme court determined that an amendment to the Tax Code referred to as section 24 provided "a specific, limited exception to the generalized provisions of the Tax Code that confer exclusive jurisdiction over suits such as Allcat's on the district courts of Travis County" and "gives this Court original, exclusive jurisdiction to consider the facial challenge to the Act's constitutionality." Id. at 462-63. In addition, when responding to the dissent's suggestion that section 112.108 prohibited mandamus relief, the supreme court explained that "[w]hile section 112.108 of the Tax Code may generally limit the granting of mandamus relief under certain circumstances, section 24 of the Act is a later-enacted, specific grant of original jurisdiction-including mandamus jurisdiction-over the type of proceeding Allcat brings: a challenge to the constitutionality of the Act." Id. at 473. However, when determining that it did "not have original jurisdiction over" the as-applied challenge, the supreme court stated that "the Tax Code expressly provides not only which courts have jurisdiction to provide relief in taxpayer challenges-the district courts of Travis County-but also addresses whether those courts are authorized to provide mandamus or other similar relief," and the supreme court also cited and quoted the language from section 112.108. Id. at 471 & n.12. In its opinion, the supreme court provided no discussion regarding whether the amendments made to section 112.108 corrected the constitutional infirmities that the court identified in R Communications II and made no mention of our determination in Bandag that the amendments did not fulfill that purpose.
In another original proceeding issued a year after Allcat , a taxpayer, Nestle USA, Inc., sought "a declaration that the Texas franchise tax is unconstitutional, an injunction prohibiting its collection, and mandamus relief compelling the Comptroller to refund the taxes they paid from 2008 through 2011." In re Nestle USA, Inc. , 359 S.W.3d 207, 208 (Tex. 2012) (orig. proceeding) (internal footnote omitted). Before seeking mandamus relief, Nestle did not comply with the prepayment requirements for protest suits or for suits seeking injunctive relief, nor did Nestle pursue an administrative refund claim before filing suit. Id. In its analysis, the supreme court explained that after section 112.108 was enacted in 1989, declaratory judgments challenging tax assessments were no longer allowed and that the only actions permitted under the Tax Code "are a suit after payment under protest, suit for injunction after payment or posting of a bond, and a suit for a refund." Id. at 211. Further, the supreme court determined "that the statutory prerequisites are conditions *858 on the legislative waiver of the State's immunity from suit" and dismissed the suit for lack of jurisdiction for failure to comply with those prerequisites. Id. at 208, 212. Moreover, although the supreme court mentioned its prior invalidation of section 112.108 and discussed how section 112.108 had been amended after its ruling in R Communications II , the supreme court also explained that the parties were not arguing that the amended version of 112.108 and its restrictions on the types of tax challenges that may be pursued were unconstitutional. Id. at 211 nn.38-39. Accordingly, the supreme court made no determination regarding whether the language of the amendment actually cured the constitutional defects, nor did the supreme court mention this Court's invalidation of the amended version of section 112.108. See Richmont Aviation , 2013 WL 5272834, at *5 n.3 (disagreeing with Comptroller's suggestion that decision in Nestle overruled Bandag because supreme court did not mention Bandag or its invalidation of section 112.108 and because supreme court did not "expressly state that the amendment cured the constitutional infirmity"); FM Express Food Mart , 2013 WL 1149551, at *6 n.6 (noting that although supreme court mentioned in Nestle that section 112.108 had been amended in attempt to cure constitutional deficiencies, supreme court "did not address whether it did so successfully").
In light of the fact that no action by the legislature or the supreme court has disturbed our decision in Bandag , our ruling from nearly two decades ago declaring the amended version of section 112.108 unconstitutional has left the taxpayers of Texas in the same position that they were in after the supreme court originally invalidated section 112.108 in R Communications II. See Wichita Cty. v. Robinson , 155 Tex. 1, 276 S.W.2d 509, 515 (1954) (op. on reh'g) (noting "as a general rule a law held unconstitutional is void from the beginning and was never valid and enforceable at any time"). In other words, taxpayers who are seeking to challenge assessments may do so by complying with all of the statutory prerequisites for filing suits under the Tax Code, including the prepayment obligations for protest suits and for suits seeking injunctive relief, and taxpayers who are not seeking a return of any tax money paid may pursue a permissible declaratory-judgment action seeking relief other than a return of money provided that the suit is not otherwise barred by sovereign immunity. See R Commc'ns II , 875 S.W.2d at 318 ; Cobb , 190 S.W.2d at 712 ; First State Bank , 863 S.W.2d at 83 ; Hammerman , 791 S.W.2d at 331. Moreover, as the supreme court has previously determined, the availability of that type of declaratory-judgment action cures any potential open-courts violation stemming from the imposition of prepayment requirements because taxpayers may avail themselves of the option of seeking declaratory relief without prepaying. See Weck , 884 S.W.2d at 154 ; R Commc'ns II , 875 S.W.2d at 318.
Prior to and following the invalidations of section 112.108 by the supreme court and this Court, courts have further clarified the scope of sovereign immunity and the role that declaratory-judgment actions may serve in challenging governmental actions. Those explanations are consistent with the limited nature of the option of seeking the types of permissible declaratory relief discussed above. In particular, the supreme court has explained that the Uniform Declaratory Judgments Act "does not enlarge the trial court's jurisdiction" because it is only a procedural tool for determining cases that are already within the court's jurisdiction. Texas Dep't of Transp. v. Sefzik , 355 S.W.3d 618, 621-22 (Tex. 2011) ; see *859 Texas Ass'n of Bus. , 852 S.W.2d at 444 (explaining that courts have construed Uniform Declaratory Judgments Act as "a procedural device for deciding cases already within a court's jurisdiction rather than a legislative enlargement of a court's power"). In addition, "state agencies ... are immune from suits under the" Act "unless the Legislature has waived immunity for the particular claims at issue." Sefzik , 355 S.W.3d at 620. "For example, the state may be a proper party to a declaratory judgment action that challenges the validity of a statute" because the Act "waives sovereign immunity" for that type of suit. Id. at 622. However, the supreme court has explained that the Act "does not waive the state's sovereign immunity when the plaintiff seeks a declaration of his or her rights under a statute or other law." Id. at 621. In other words, the Act does not expressly waive immunity for challenges to an agency's actions under a statute, rather than a challenge to the validity of the statute.[3] ibr.US_Case_Law.Schema.Case_Body:v1">See id. at 621-22 ; see also Texas State Bd. of Veterinary Med. Exam'rs v. Giggleman , 408 S.W.3d 696, 707 (Tex. App.-Austin 2013, no pet.) (noting "the [Act]'s limited waiver of immunity").[4] But those types of claims may possibly be brought under another exception to sovereign immunity: "the ultra vires exception." Sefzik , 355 S.W.3d at 621. Under that exception, claims "cannot be brought against the state, which retains immunity, but must be brought against the state actors in their official capacities." City of El Paso v. Heinrich , 284 S.W.3d 366, 373 (Tex. 2009) ; see also Sefzik , 355 S.W.3d at 621 (noting that ultra vires "lawsuits are not against the state and thus are not barred by sovereign immunity"); Machete's Chop Shop, Inc. v. Texas Film Comm'n , 483 S.W.3d 272, 278 (Tex. App.-Austin 2016, no pet.) (explaining that "[s]overeign immunity extends to state officials acting in their official capacity" but that ultra vires claim is "exception to sovereign immunity"). To fall within the exception, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." Heinrich , 284 S.W.3d at 372. However, an individual "who successfully proves an ultra vires claim is entitled to prospective" relief but is not entitled to retrospective relief. Id. at 376.
Having set out the governing framework, we now turn to the dispute at issue in this case.
BACKGROUND
Following an audit regarding report years 2009 through 2012, the Comptroller determined that EBS owed $298,520 in franchise taxes, penalties, and interest. Upon receiving the assessment, EBS made two payments of $75,000 each. After making *860 those payments, EBS filed suit against the Comptroller in his official capacity seeking the return of the partial payments that EBS made. In its petition, EBS alleged that it made the two payments under protest and invoked the statutes governing protest suits. See Tex. Tax Code §§ 112.051 -.060. In addition, EBS asserted that it was seeking injunctive relief under section 112.101 to enjoin the Comptroller "from engaging in further collection actions against EBS."See id. § 112.101. As part of its suit, EBS also filed an oath of inability to pay under authority of the amended version of section 112.108, asserting that it was unable to pay the full amount owed before challenging the assessment and that requiring EBS to pay the full amount would constitute an unreasonable restraint on its right to access the courts. After convening a hearing regarding the oath, the district court concluded "that prepayment of the franchise taxes, penalties, and interest ... would constitute an unreasonable restraint of [EBS]'s right of access to the courts."
As support for its claims that it was entitled to a return of the taxes that it paid under protest, EBS contended in its petition that the assessment was improper because the Comptroller excluded "labor from the cost of goods sold calculation" under section 171.1012 of the Tax Code. See id. § 171.1012. In addition, EBS alleged that the Comptroller's assessment denied EBS of "the revenue exclusion for flow-through payments to subcontractors for real property repair" as purportedly allowed under section 171.1011(g) of the Tax Code. See id. § 171.1011(g). Moreover, EBS argued that the Comptroller's assessment ignored "the revenue exclusions for management companies and fiduciaries" authorized under section 171.1011(m-1) of the Tax Code. See id. § 171.1011(m-1). Further, EBS asserted that the Comptroller's assessment "incorrectly understates the compensation deduction" and improperly excluded "from the compensation deduction the amount EBS paid to staff leasing services companies for covered employees" that EBS insisted was allowed under section 93.001(2) of the Labor Code and under section 171.1013(e) of the Tax Code. See Tex. Lab. Code § 93.001(2) ; Tex. Tax Code § 171.1013(e). In a related argument, EBS urged that the Comptroller's assessment improperly reduced "the compensation deduction by the net distributive loss reported by EBS" in contravention of section 171.1013(a)(2) of the Tax Code and that to the extent that Comptroller Rule 3.589(b)(5) allows for the inclusion of a net distributive loss, the Rule is invalid because it contradicts the language of section 171.1013(a)(2) of the Tax Code. See Tex. Tax Code § 171.1013(a)(2) ; 34 Tex. Admin. Code § 3.589 (2017) (Comptroller of Pub. Accounts, Margin: Compensation). Additionally, EBS contended that the Comptroller's assessment misapplied "the common reporting provisions included in" section 171.1014 of the Tax Code. See Tex. Tax Code § 171.1014. Finally, EBS urged that the Comptroller's "interpretation of the various provisions of the franchise tax places an unreasonable burden on EBS" that "violates the Texas Equal and Uniform requirement[ ] and the Fourteenth Amendment's Due Process guarantee." See U.S. Const. amend. XIV ; Tex. Const. art. VIII, § (1)(a).
In response to EBS's suit, the Comptroller filed a plea to the jurisdiction, arguing that the suit should be dismissed for lack of subject-matter jurisdiction because EBS did not meet the statutory prepayment requirements for filing a protest suit and for seeking injunctive relief under the Tax Code. See Tex. Tax Code §§ 112.051, .101. In addition, the Comptroller urged that EBS's attempt to avoid the prepayment *861 obligations by filing an oath of inability to pay under section 112.108 was ineffective because the entirety of section 112.108 has been declared unconstitutional.
After considering the parties' arguments, the district court denied the Comptroller's plea to the jurisdiction. The Comptroller appeals the district court's ruling.
STANDARD OF REVIEW
"Subject matter jurisdiction presents a question of law" that appellate courts "review de novo." City of Houston v. Rhule , 417 S.W.3d 440, 442 (Tex. 2013). A plea to the jurisdiction challenges a trial court's authority to decide the subject matter of a specific cause of action. See Texas Dep't of Parks & Wildlife v. Miranda , 133 S.W.3d 217, 225-26 (Tex. 2004). Accordingly, appellate courts perform a de novo review of a trial court's ultimate ruling on a plea to the jurisdiction. Westbrook v. Penley , 231 S.W.3d 389, 394 (Tex. 2007) ; see Harris Cty. v. Sykes , 136 S.W.3d 635, 638 (Tex. 2004) (explaining that "[a] plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction"). Analysis of whether this authority exists begins with the plaintiff's live pleadings. See Miranda , 133 S.W.3d at 226. The plaintiff has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. See ids="9256802" index="105" url="https://cite.case.law/sw3d/133/217/#p225">id. ; see also State v. Holland , 221 S.W.3d 639, 642 (Tex. 2007) (stating that reviewing courts look to the plaintiff's petition to determine "whether the facts pled affirmatively demonstrate that jurisdiction exists"). "When, as here, the facts relevant to jurisdiction are undisputed, the court should make the jurisdictional determination as a matter of law based solely on those undisputed facts." Machete's Chop Shop , 483 S.W.3d at 278. "If the pleadings are insufficient to establish jurisdiction but do not affirmatively demonstrate an incurable defect, the plaintiff should be afforded the opportunity to replead." Holland , 221 S.W.3d at 643. However, if "the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." Miranda , 133 S.W.3d at 227. When, as here, "an action is grounded in statute, subject matter jurisdiction must be shown under the applicable statute." Arnold v. Price , 365 S.W.3d 455, 459 (Tex. App.-Fort Worth 2011, no pet.).
DISCUSSION
On appeal, the Comptroller contends that the district court's order denying the plea to the jurisdiction should be reversed. When attacking the district court's ruling, the Comptroller argues that the Tax Code "requires the taxpayer prepay the assessed tax in its entirety or post a bond for twice that amount" before filing a protest suit or seeking injunctive relief, that "EBS's partial payment is not sufficient to constitute compliance with the prepayment requirements," and that "[t]here is no valid exception for a taxpayer who files an Oath of Inability to Pay."
As set out above, EBS paid some of the taxes owed before filing a protest suit and seeking injunctive relief under the Tax Code. See Tex. Tax Code §§ 112.051 -.052, .101. For protest suits, the Tax Code obligates the taxpayer to "pay the amount claimed by the state," and nothing in the language of the statute indicates that a partial payment can satisfy this obligation. See id. § 112.051. Similarly, for suits seeking injunctive relief, the Tax Code mandates that the taxpayer pay the "taxes, fees, and penalties then due" or file a bond "in an amount equal to twice the amount of the taxes, fees, and penalties then due," and nothing in the language of that statute *862 indicates that a partial payment will suffice. See id. § 112.101.
When discussing the statutory requirements that must be complied with before challenging a tax assessment, including the prepayment obligations, the supreme court has explained that those "statutory prerequisites are conditions on the legislative waiver of the State's immunity from suit." In re Nestle , 359 S.W.3d at 208. Consistent with the supreme court's characterization, this Court has dismissed claims for lack of subject-matter jurisdiction if the taxpayers failed to comply with the statutory prerequisites. See Office of Comptroller of Pub. Accounts v. Pakse, Inc. , No. 03-16-00121-CV, 2017 WL 4583213, at *1, *2, *3-4 (Tex. App.-Austin Oct. 10, 2017, no pet.) (mem. op.) (deciding that trial court did not have jurisdiction over challenges to assessed taxes under Administrative Procedure Act and under Uniform Declaratory Judgments Act because claims were "seeking to avoid paying the taxes assessed by the Comptroller" and because taxpayer did not comply with requirements of chapter 112 of Tax Code, including requirements of prepayment and filing protest); Office of Comptroller of Pub. Accounts v. Farshid Enters., L.L.C. , No. 03-16-00291-CV, 2017 WL 1404731, at *2, *6 (Tex. App.-Austin Apr. 23, 2017, pet. denied) (mem. op.) (noting that taxpayers did not "pay the tax assessment prior to filing suit" or "file a notice of protest" as required by statute, reversing "trial court's order denying the Comptroller's plea to the jurisdiction," and dismissing "those claims for lack of subject matter jurisdiction"); Sanadco, Inc. v. Office of Comptroller of Pub. Accounts , No. 03-11-00462-CV, 2015 WL 1478200, at *4, *6 (Tex. App.-Austin Mar. 25, 2015, pet. denied) (mem. op.) (determining that "the district court ha[d] no jurisdiction over any of [Sanadco's] counterclaims" "[b]ecause Sanadco did not comply with the mandatory Chapter 112 requirements," including prepayment requirements, and affirming "the district court's order dismissing all of Sanadco's counterclaims on jurisdictional grounds").[5]
*863 In line with the reasoning from the cases set out above, we must similarly conclude that the district court did not have jurisdiction to consider EBS's tax-protest suit and its injunctive claims under the Tax Code because EBS did not comply with the statutory prerequisites for pursuing those types of suits.
On appeal, EBS contends that the district court's ruling should be upheld because "[r]equiring a taxpayer to prepay assessed tax in its entirety or post a bond for twice that amount to exercise its right to judicial review is unconstitutional." However, this argument ignores the effect of our ruling in Bandag and the analysis from the supreme court in R Communications II. As discussed previously, this Court's invalidation of the amended version of section 112.108 afforded taxpayers the same options that were available to them when the supreme court invalidated the prior version of section 112.108 in R Communications II. More specifically, the supreme court explained in R Communications II that the invalidation of section 112.108 allowed taxpayers to once again pursue a declaratory-judgment action that would not otherwise be barred by sovereign immunity and that any violation of the open-courts provision stemming from requiring taxpayers to comply with the statutory prerequisites before pursing a protest suit or seeking injunctive relief was cured by the invalidation of section 112.108. 875 S.W.2d at 318 ; see Weck , 884 S.W.2d at 154 ; First State Bank , 863 S.W.2d at 83 ; Hammerman , 791 S.W.2d at 331. In light of this analysis, we must similarly conclude that requiring EBS to comply with the prepayment obligations when filing a protest suit and when seeking injunctive relief under the Tax Code did not violate EBS's constitutional rights because EBS had another avenue available to it that did not involve prepayment obligations in that EBS could have pursued the type of declaratory relief recognized by the supreme court as being available prior to the enaction of section 112.108.
In its brief, EBS asserts that it did not have the option of pursuing a declaratory-judgment action because this Court has repeatedly held that chapter 112 of the Tax Code provides the only means for challenging tax assessments and, accordingly, that parties may not use declaratory-judgment actions. In attempting to reconcile a directive by the supreme court indicating that the amendment to section 112.108 would not survive constitutional scrutiny, see Lall , 924 S.W.2d at 690-92, with a subsequent directive by the supreme court that the enactment of section 112.108 mandated that the only permissible challenges to tax assessments were those outlined in chapter 112 of the Tax Code, see In re Nestle , 359 S.W.3d at 211, and in the face of nearly two decades of legislative inaction regarding the constitutionality of section 112.108 despite our ruling in Bandag and subsequent cases, this Court has perhaps inartfully suggested multiple times that suits for declaratory relief pertaining to tax assessments may not be pursued, see, e.g., Pakse , 2017 WL 4583213, at *1, *2-5 (commenting that taxpayers did not comply with requirements of chapter 112 before filing suit and determining that suits for declaratory and injunctive relief challenging assessment of taxes were improper because legislature provided exclusive method for challenging assessments through enactment of chapter 112); Farshid , 2017 WL 1404731, at *2, *5 (noting that taxpayers did not comply with *864 requirements for filing tax-protest suit; explaining that permissible "methods for seeking judicial review of tax assessments are protest suits, refund suits, and suits for injunctive relief brought under chapter 112"; and concluding "that appellees may not circumvent the statutory requirements in chapter 112 of the Tax Code to invoke the trial court's jurisdiction by casting their challenges to the Comptroller's tax assessment ... under the ... UDJA"); Sanadco , 2015 WL 1478200, at *3, *4 (observing that taxpayer did not comply with statutory requirements under chapter 112 before filing suit and concluding that declaratory-judgment actions regarding tax assessment "are preempted by Chapter 112 of the Tax Code, which the supreme court has held provides exclusive remedies for relief from assessed taxes on any basis").[6] Although we have no doubt that the legislature intended when it enacted and amended section 112.108 to foreclose challenges to tax assessments other than those authorized by the language of chapter 112 of the Tax Code, the amended version of section 112.108 has been invalidated by this Court, and the legal landscape has, therefore, reverted back to what it was when the supreme court invalidated the original version of section 112.108. Accordingly, to the extent that the cases cited above relied on the language of the amended version of section 112.108 or on cases construing that language to suggest that declaratory-judgment actions other than the types listed in section 112.108 may not be pursued to seek relief relating to tax liability, we must now disavow those portions of the analyses from those cases.
As discussed previously, EBS only sought in its petition to pursue a tax-assessment-protest suit and to request injunctive relief authorized by the Tax Code. See Tex. Tax Code §§ 112.051 -.060, .101-.107. By invoking the Tax Code, EBS was obligated to comply with the requirements listed in the Code when seeking the return of the money that it paid as taxes. See Hammerman , 791 S.W.2d at 331 (noting that compliance with Tax Code is mandatory for suits seeking to recover taxes). Because EBS did not comply with the prepayment obligations, EBS did not invoke the jurisdiction of the district court.[7]
For all the reasons previously given, we sustain the Comptroller's issue on appeal and conclude that the district court did not have jurisdiction over EBS's tax-protest suit and suit for injunctive relief under the Tax Code. Accordingly, we reverse the district court's ruling regarding the plea to the jurisdiction. However, because EBS's pleadings do not affirmatively negate the possible existence of jurisdiction, we will remand the case to allow EBS the opportunity to amend its pleadings.
*865 CONCLUSION
Having sustained the Comptroller's issue on appeal, we reverse the district court's order denying the Comptroller's plea to the jurisdiction and remand for further proceedings consistent with this opinion.

In its opinion, the supreme court explained that its holding "should not be construed to imply that the guarantee of open courts protects declaratory judgment actions per se." R Commc'ns, Inc. v. Sharp , 875 S.W.2d 314, 318 n.8 (Tex. 1994) ("R Commc'ns II "). On the contrary, the court reasoned that "[t]he constitutional defect in the current prohibition against such relief arises from its impact on taxpayers in combination with other provisions of the existing Code" and that rather than mandating "an unconditional right to declaratory relief," the court was simply instructing "that some constitutionally adequate means of judicial review not dependent on prior payment be provided." Id.

The amended version of section 112.108 reads as follows:
Except for a restraining order or injunction issued as provided by this subchapter, a court may not issue a restraining order, injunction, declaratory judgment, writ of mandamus or prohibition, order requiring the payment of taxes or fees into the registry or custody of the court, or other similar legal or equitable relief against the state or a state agency relating to the applicability, assessment, collection, or constitutionality of a tax or fee covered by this subchapter or the amount of the tax or fee due, provided, however, that after filing an oath of inability to pay the tax, penalties, and interest due, a party may be excused from the requirement of prepayment of tax as a prerequisite to appeal if the court, after notice and hearing, finds that such prepayment would constitute an unreasonable restraint on the party's right of access to the courts. The court may grant such relief as may be reasonably required by the circumstances. A grant of declaratory relief against the state or a state agency shall not entitle the winning party to recover attorney fees.
See Act of May 24, 1995, 74th Leg., R.S., ch. 579, § 13, sec. 112.108, 1995 Tex. Gen. Laws 3374, 3377 (codified at Tex. Tax Code § 112.108 ).

To the extent that the supreme court's opinion in R Communications II can be read as authorizing the use of a declaratory-judgment action to seek a refund of taxes actually paid by a taxpayer rather the types of permissible declaratory relief discussed previously, that reading would seem to be inconsistent with subsequent supreme court precedent summarized above.

In addition to noting the waiver provided by the Uniform Declaratory Judgments Act, we also observe that section 2001.038 of the Administrative Procedure Act authorizes declaratory-judgment actions regarding "[t]he validity or applicability of a rule," see Tex. Gov't Code § 2001.038(a), and that this Court has explained that section 2001.038 waives sovereign immunity, see Machete's Chop Shop, Inc. v. Texas Film Comm'n , 483 S.W.3d 272, 286 (Tex. App.-Austin 2016, no pet.) (providing that " 'section 2001.038 is a grant of original jurisdiction and[ ] ... waives sovereign immunity' " (quoting Texas Logos, L.P. v. Texas Dep't of Transp. , 241 S.W.3d 105, 123 (Tex. App.-Austin 2007, no pet.) ) ).

In its brief, EBS urges that our prior determinations in Office of Comptroller of Public Accounts v. Pakse, Inc. , No. 03-16-00121-CV, 2017 WL 4583213 (Tex. App.-Austin Oct. 10, 2017, no pet.) (mem. op.); Office of Comptroller of Public Accounts v. Farshid , No. 03-16-00291-CV, 2017 WL 1404731 (Tex. App.-Austin Apr. 23, 2017, pet. denied) (mem. op.); and Sanadco, Inc. v. Office of Comptroller of Public Accounts , No. 03-11-00462-CV, 2015 WL 1478200 (Tex. App.-Austin Mar. 25, 2015, pet. denied) (mem. op.), should not compel a conclusion that the district court did not have jurisdiction over EBS's claims. First, EBS contends that unlike the taxpayers at issue in the cases referenced above who failed to comply with several of the statutory prerequisites to suit, EBS allegedly only failed to comply with the prepayment obligations. Next, EBS contends that the failure to comply with the prepayment obligations should be excused because the supreme court has already determined that those requirements violate the open-courts provision.
Contrary to EBS's assertions, the supreme court did not determine that the requirement of prepayment before filing suit under the Tax Code violated the open-courts provision; rather, the supreme court determined that the open-courts provision was violated by the combination of requiring prepayment, of banning declaratory relief through the enactment of section 112.108, and of requiring taxpayers to wait for the Comptroller to file a collection suit before being able to seek redress in court. See R Commc'ns II , 875 S.W.2d at 317-18. As set out more thoroughly in the body of the opinion, the supreme court also determined that the constitutional defect was cured by invalidating the ban on other types of relief found in section 112.108. See id. at 318. Accordingly, we disagree with EBS's suggestion that the prepayment obligations themselves have been deemed unconstitutional by the supreme court. Bearing in mind this constitutional determination, we have found nothing in the language of the referenced cases above that would lead us to conclude that the failure to comply with the prepayment obligations should be treated differently than the failure to comply with the other statutory requirements, including the requirement of filing a written protest. See Tex. Tax Code § 112.051(b).

In addition to concluding that section 112.108 barred parties from challenging their tax assessments using procedures other than those authorized by the Tax Code, this Court has also referenced the amended version of section 112.108 when stating that the provision does not bar all types of declaratory relief pertaining to the collection of taxes. See, e.g. , Combs v. Entertainment Publ'ns, Inc. , 292 S.W.3d 712, 722-23 (Tex. App.-Austin 2009, no pet.) (reasoning that prohibition against declaratory relief found in section 112.108 does not bar all declaratory relief and did not preclude declaratory relief regarding validity of rule).

As an alternative argument, EBS contends that if section 112.108 is valid, it has complied with the provisions of that provision because it filed an oath of inability to pay and because the district court determined that requiring EBS to prepay the taxes would unreasonably restrain EBS's right to access the courts. Having reaffirmed our prior holding that section 112.108 is invalid, we need not express any opinion regarding EBS's alternative argument.