# IN THE SUPREME COURT OF TEXAS

═══════════

No. 18-0503

═══════════

EBS SOLUTIONS, INC., PETITIONER,

v.

GLENN HEGAR, COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS;
AND KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS, RESPONDENTS

═══════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

═══════════════════════════════

**Argued December 3, 2019**

JUSTICE GREEN delivered the opinion of the Court.

In this case, we must determine whether the trial court has subject matter jurisdiction over a taxpayer's suit to challenge the Comptroller's franchise tax assessment. Having prepaid some of the taxes due under the assessment and filed an oath of inability to pay the remainder, the taxpayer contends that it satisfied Chapter 112's jurisdictional requirements under section 112.108 of the Tax Code. *See* TEX. TAX CODE § 112.108. The Comptroller asserts that the court of appeals previously declared section 112.108 unconstitutional and argues that partial prepayment of taxes owed is insufficient to waive the State's sovereign immunity. *See Rylander v. Bandag Licensing Corp.*, 18 S.W.3d 296, 305 (Tex. App.—Austin 2000, pet. denied). The court of appeals held that the trial court lacked jurisdiction to consider the suit because by failing to prepay the taxes due in full, the

taxpayer did not comply with the Tax Code's statutory requirements. 549 S.W.3d 849 (Tex. App.—Austin 2018). We hold that section 112.108 of the Texas Tax Code, as applied to EBS, does not create an unreasonable financial barrier of access to the courts, but instead allows EBS to exercise its right to access the courts to seek judicial review of its tax assessment. Because the taxpayer satisfied the statute's requirements to waive the State's sovereign immunity, we reverse the court of appeals' judgment and remand the case to the trial court for further proceedings.

## I. Factual Background

The facts in this case are undisputed. The Comptroller audited EBS Solutions, Inc.'s franchise tax report for years 2009 through 2012, assessing additional taxes, penalties, and interest in the amount of $298,519.50. EBS timely filed for redetermination. *See* TEX. TAX CODE § 111.009. After a hearing, the administrative law judge ruled in the Comptroller's favor, leaving the assessment at $298,519.50. EBS then made two partial payments in protest, totaling $150,000. EBS included a protest letter with each payment. Additionally, EBS filed with the Attorney General a statement of grounds for seeking an injunction, as required by Texas Tax Code section 112.101. *See id.* § 112.101(a)(1). Soon after, EBS filed suit seeking return of the partial payment and an injunction to prohibit the Comptroller from taking action to collect the remainder of the taxes owed under the assessment.[1]

---

[1] Although EBS sought to recover tax monies paid in protest, EBS did not bring a claim for declaratory judgement or tax refund suit under section 112.151. Rather, EBS challenged its tax assessment by seeking an injunction under section 112.101, to prohibit the Comptroller from collecting additional taxes, and through a tax protest suit under section 112.052, seeking recovery of tax monies prepaid.

2

Relying on the inability-to-pay provision of section 112.108, EBS filed an oath of inability to pay the remainder of the taxes assessed, claiming that requiring it to prepay the full amount of taxes assessed would constitute an unreasonable restraint on EBS's access to the courts. *See id.* § 112.108 (providing an inability-to-pay exception to the prepayment prerequisite to challenge a tax assessment). After EBS requested a hearing on its oath of inability to pay, as required by section 112.108, the Comptroller objected, arguing "that such an inquiry is wholly irrelevant" because the court of appeals had previously ruled that section 112.108 was unconstitutional. *See Bandag*, 18 S.W.3d at 305; *see also Combs v. Tex. Small Tobacco Coal.*, 440 S.W.3d 304, 310 (Tex. App.—Austin 2014) ("[W]e have held that section 112.108 is unconstitutional . . . ."), *overruled on other grounds sub nom. Hegar v. Tex. Small Tobacco Coal.*, 496 S.W.3d 778 (Tex. 2016). After a hearing, the trial court found that requiring EBS to pay "the franchise taxes, penalties, and interest assessed . . . would constitute an unreasonable restraint on [EBS]'s right of access to the courts."

Incorporated into its original answer, the Comptroller filed a plea to the jurisdiction asserting that the trial court lacked subject matter jurisdiction because EBS had failed to meet the applicable prepayment prerequisite by only paying about half of the tax assessment. *See* TEX. TAX CODE §§ 112.051(a), .101. Because EBS did not pay the full amount of the assessment, as required by sections 112.051 and 112.101, and the court of appeals had previously ruled that section 112.108 as amended failed to cure the constitutional defect we identified in *R Communications v. Sharp*, 875 S.W.2d 314 (Tex. 1994), *see Bandag*, 18 S.W.3d at 305, the Comptroller took the position that sovereign immunity was not waived and the trial court was required to dismiss EBS's protest suit

and request for an injunction. *See* TEX. TAX CODE §§ 112.051, .101. The trial court denied the Comptroller's plea to the jurisdiction.

The court of appeals reversed the trial court's denial of the plea to the jurisdiction. 549 S.W.3d at 864. The court referenced this Court's analysis in *R Communications*, in which we held section 112.108, before amendment, was unconstitutional, and the court of appeals' earlier holding in *Bandag* to hold that "the amended version of section 112.108 was unconstitutional and explained that 'the entirety of section 112.108' was an 'unreasonable financial barrier against access to the courts.'" *Id.* at 856 (citing *Bandag*, 18 S.W.3d at 304–05). Noting that the *Bandag* decision remained undisturbed by this Court and the Legislature after almost twenty years, the court of appeals determined that EBS "ignore[d] the effect of [its] ruling in *Bandag*" and did not satisfy the statutory prerequisites necessary to waive the State's sovereign immunity or pursue a common-law declaratory judgment claim. *Id.* at 863. The court held that after *Bandag*,"the legal landscape . . . reverted back to what it was when the [S]upreme [C]ourt invalidated the original version of section 112.108." *Id.* at 864. Accordingly, the court of appeals concluded whether EBS complied with section 112.108's inability-to-pay procedural requirements was irrelevant because "section 112.108 is invalid." *Id.* at 864 n.7.

**II. Standard of Review**

Sovereign immunity implicates a court's subject matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). "As subject-matter jurisdiction is a question of law, we review a trial court's ruling on a plea to the jurisdiction de novo." *Hous. Belt & Terminal Ry. Co. v. City of Hous.*, 487 S.W.3d 154, 160 (Tex. 2016) (citing *Klumb v. Hous. Mun. Emps.*

4

*Pension Sys.*, 458 S.W.3d 1, 8 (Tex. 2015)). In determining whether the State has waived sovereign immunity, we apply traditional principles of statutory interpretation. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). When we interpret a statute, our purpose is to give effect to the Legislature's intent by looking at its plain and ordinary meaning, "and then consider the term's usage in other statutes, court decisions, and similar authorities." *Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017). We turn to extrinsic sources only if the statute is ambiguous or if applying the statute's plain meaning would produce an absurd result. *See Tex. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 135 (Tex. 2018); *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009).

### III. Analysis

### A. Jurisdiction in Suits Challenging Tax Assessments

Although the trial court generally lacks jurisdiction to hear a taxpayer's challenge to a tax assessment, *see* TEX. TAX CODE § 112.108, the Legislature has waived the State's sovereign immunity as to three types of tax challenges—protests, injunctions, and refunds—conferring exclusive, original jurisdiction on the district courts of Travis County. *In re Nestle USA, Inc.*, 359 S.W.3d 207, 208–09 (Tex. 2012); *R Commc'ns*, 875 S.W.2d at 318–19; *see* TEX. TAX CODE §§ 112.001, .051, .101, .108. For each of these suits, the taxpayer normally must meet some prepayment prerequisite prior to bringing the tax suit. *See* TEX. TAX CODE §§ 112.001, .051, .101. For a protest or refund suit, the taxpayer must first pay the amount allegedly owed in taxes and fees, accompanied by a statement as to which type of challenge the taxpayer makes. *Id.* §§ 112.051, .151. For a suit seeking a statutory injunction, the taxpayer elects to either pay the taxes, fees, and

penalties allegedly owed or file a "good and sufficient bond" equal to twice the amount of taxes, fees, and penalties allegedly owed. *Id.* § 112.101(a). We have referred to these prepayment prerequisites as jurisdictional requirements to challenging a tax assessment. *See In re Nestle USA, Inc.*, 387 S.W.3d 610, 616 (Tex. 2012) (citing *Nestle*, 359 S.W.3d at 208).

In section 112.108, the Legislature carved out an exception to the prepayment prerequisite, allowing certain taxpayers to challenge a tax assessment without meeting the prepayment prerequisite. TEX. TAX CODE § 112.108. As originally enacted, section 112.108 provided that except in the case of a restraining order or injunction "as provided by this subchapter,"

> a court may not issue a restraining order, injunction, declaratory judgment, writ of mandamus or prohibition, order requiring the payment of taxes or fees into the registry or custody of the court, or other similar legal or equitable relief against the state or a state agency relating to the applicability, assessment, collection, or constitutionality of a tax or fee covered by this subchapter or the amount of the tax or fee due.

*See* Act of May 19, 1989, 71st Leg., R.S., ch. 232, § 16, 1989 Tex. Gen. Laws 1070, 1074 (amended 1995). As the court of appeals discussed, this Court considered the constitutionality of that version of section 112.108 in *R Communications*. 549 S.W.3d at 853–55 (discussing *R Communications*, 875 S.W.2d at 315–18). This Court reasoned that the prepayment prerequisites of sections 112.051 and 112.101, combined with the "ban on declaratory judgments in section 112.108, and the inadequacy of the remedy of awaiting the filing of a collection suit [under sections 111.010 and 111.013(b)] by the Comptroller mean that a taxpayer is financially restricted in its ability to get to court." *R Commc'ns*, 875 S.W.2d at 317–18. As a result, this Court declared section 112.108's ban on declaratory judgments, as originally written, unconstitutional as a violation of the Texas

Constitution's Open Courts Provision because, when combined with the prepayment provisions, it conditioned the ability to challenge a tax assessment on full prepayment, and the Court remedied the defect by permitting the taxpayer to bring a suit for declaratory relief. *Id.* at 318; *see* TEX. CONST. art. I, § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.").

The following legislative session, the Legislature amended section 112.108, keeping the statute identical to its original version but adding the following exception:

> provided, however, that after filing an oath of inability to pay the tax, penalties, and interest due, a party may be excused from the requirement of prepayment of tax as a prerequisite to appeal if the court, after notice and hearing, finds that such prepayment would constitute an unreasonable restraint on the party's right of access to the courts.

Act of May 24, 1995, 74th Leg., R.S., ch. 579, § 13, 1995 Tex. Gen. Laws 3374, 3377 (current version at TEX. TAX CODE § 112.108). Thus, section 112.108 excuses the prepayment prerequisite and allows a taxpayer to challenge its tax assessment in district court if a taxpayer meets certain requirements that include filing a statement that it is unable to pay the monies owed. *See* TEX. TAX CODE § 112.108. Although this Court has not ruled on whether the inability-to-pay amendment to section 112.108 resolved the constitutional problem created by combination of the prepayment prerequisites and section 112.108's ban on declaratory judgment actions, we have noted that after *R Communications*, the Legislature amended the statute "to preclude an Open Courts violation." *Nestle*, 359 S.W.3d at 211 n.38 (citation omitted).

7

## B. Constitutionality of Section 112.108 as Amended

Both parties urge us to take this opportunity to rule on whether section 112.108 as amended, which still bans declaratory relief, violates the Open Courts Provision, as we held the original version did. *See R Commc'ns*, 875 S.W.2d at 318. EBS argued in the trial court that it complied with all valid requirements of Chapter 112, asserting that conditioning its suit on full prepayment of the entire sum owed would unreasonably restrain its access to the courts. In other words, EBS assumed section 112.108's amendment resolved the constitutional problem and relied on the inability-to-pay exception for access to the courts. Relying on the court of appeals' decision in *Bandag*, the Comptroller assumed that section 112.108 had been declared unconstitutional in its entirety—making the inability-to-pay exception void—and asserted that EBS's failure to comply with the full prepayment prerequisites deprived the court of jurisdiction. *See Bandag*, 18 S.W.3d at 304. In this Court, EBS argues that the court of appeals' interpretation of section 112.108 as amended—that the statute remains unconstitutional and that EBS failed to comply with Chapter 112's prepayment prerequisites to waive the State's sovereign immunity and, additionally, did not seek a declaratory judgment action—deprives it of access to the courts in violation of the Open Courts Provision. EBS does not contend that the statute as amended itself violates the Open Courts Provision; rather, EBS argues that the court of appeals' decision creates an Open Courts violation because the court refused to recognize the statutory exception that would allow EBS access to the courts without an unreasonable restraint.

8

## 1. Open Courts Challenge

When we have reviewed Open Courts challenges to taxing statutes, taxpayers have typically challenged the constitutionality of the statute in the trial court. *See* TEX. CONST. art. I, § 13; *see, e.g.*, *Cent. Appraisal Dist. of Rockwall Cty. v. Lall*, 924 S.W.2d 686, 692 (Tex. 1996); *R Commc'ns*, 875 S.W.2d 314; *State v. Flag-Redfern Oil Co.*, 852 S.W.2d 480, 484–85 & n.6 (Tex. 1993); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 450 (Tex. 1993). Unlike in those cases, however, EBS did not assert in the trial court that any provision in Chapter 112 prevented it from accessing courts by creating an unreasonable financial barrier. The parties agree that EBS has never challenged the prepayment prerequisites in sections 112.051 and 112.101, so the constitutionality of those provisions is not before this Court. The parties also agree that EBS did not challenge section 112.108 in the trial court, and that section 112.108 as amended itself does not impose any financial barrier to the courts but only removes financial barriers for qualifying taxpayers.

Instead, EBS brought its suit by relying on section 112.108's inability-to-pay exception, which "excuse[s a taxpayer] from the requirement of prepayment of tax as a prerequisite to appeal" if the court finds that full "prepayment would constitute an unreasonable restraint on the party's right of access to the courts." TEX. TAX CODE § 112.108; *see id.* §§ 112.051, .101. The trial court made such a finding and concluded that sovereign immunity was waived because EBS met the requirements by satisfying section 112.108's inability-to-pay exception. *See id.* § 112.108. When the Comptroller appealed the trial court's denial of its plea to the jurisdiction, the court of appeals followed a line of its cases stemming from *Bandag* "to reaffirm [its] prior holding that section 112.108 [as amended] is invalid" and that EBS should have brought a suit seeking a declaratory

judgment. 549 S.W.3d at 858, 863–64 & n.7 (citations omitted). As to the availability of declaratory relief, the court explained that:

> taxpayers who are seeking to challenge assessments may do so by complying with all of the statutory prerequisites for filing suits under the Tax Code, including the prepayment obligations for protest suits and for suits seeking injunctive relief, and taxpayers who are not seeking a return of any tax money paid may pursue a permissible declaratory-judgment action seeking relief other than a return of money provided that the suit is not otherwise barred by sovereign immunity.

*Id.* at 858 (citations omitted). Thus, *Bandag* stands for the proposition that there are two avenues for challenging a tax assessment under Chapter 112: (1) file a protest or refund action or seek an injunction, and satisfy the full prepayment prerequisites; or (2) file a declaratory judgment action seeking relief other than return of taxes paid, so long as the suit is not otherwise barred by sovereign immunity. *Id.*

Acknowledging that the Legislature repeated its prohibition on declaratory relief when it amended section 112.108, and that the court of appeals itself had "perhaps inartfully suggested multiple times that suits for declaratory relief pertaining to tax assessments may not be pursued," the court remanded for EBS to have the opportunity to amend its pleadings, presumably to seek a declaratory judgment. *Id.* at 863–64. In this Court, EBS contends that the court of appeals' interpretation of the Tax Code creates an Open Courts violation that did not exist previously. That is, EBS contends that the amendment to section 112.108, which adopted the inability-to-pay exception, would allow EBS to access the courts by bringing a claim permitted by Chapter 112 without fulfilling the chapter's prepayment prerequisites, but the court of appeals' decision that

10

rendered the exception unavailable and required full prepayment of all tax, penalties, and interest assessed results in an unreasonable financial barrier to access to the courts.[2]

Because of the court of appeals' reasoning and decision, the statute's constitutionality is inextricably intertwined with the issue of whether EBS satisfied the requirements to waive the State's sovereign immunity. *See Flag-Redfern Oil Co.*, 852 S.W.2d at 484 n.6 (considering the constitutionality of an authorizing statute, even though the trial court confined its ruling to the issues of statutory construction, because the constitutional question was "intertwined" with its viability). We cannot decide whether EBS invoked the trial court's jurisdiction without first resolving the issue of whether EBS may rely on section 112.108's inability-to-pay exception as a valid mechanism to avoid the full prepayment prerequisites of sections 112.051, .052, and .101. Similarly, we cannot consider EBS's argument that the court of appeals' interpretation of the Tax Code creates an Open Courts violation without addressing whether section 112.108 is constitutional given that it retains its ban on declaratory relief but includes an inability-to-pay provision in light of precedent from this Court and the court of appeals addressing the constitutionality of prepayment prerequisites and

---

[2] The court of appeals suggested that this Court has approved taxpayer use of declaratory judgment suits under certain circumstances when relief other than a tax refund is sought, including when challenging the validity of certain Comptroller tax rules, when attacking the Comptroller's determination of whether a taxpayer is subject to a tax statute, when challenging the constitutionality of a statutory prepayment prerequisite, or when challenging agency officials' actions as ultra vires. 549 S.W.3d at 853–54, 858–59. There is no question that none of those scenarios was at issue in the trial court, and that EBS seeks to recover taxes it paid before bringing suit, as well as seeking an injunction. The court of appeals also noted that sovereign immunity has not been waived for declaratory judgment suits in which a taxpayer seeks a declaration of its rights under a statute or challenges an agency's actions under a statute. *Id.* at 859. At oral argument, EBS's counsel took the position that any declaratory judgment claim EBS could have brought would have been barred by sovereign immunity because EBS did not challenge the validity of any statute or allege ultra vires action; rather, EBS sought to challenge the Comptroller's actions under the statute. Additionally, as a matter of remedies, we have held that sovereign immunity is not waived by the state in cases where a taxpayer seeks retrospective monetary relief in a declaratory judgment action. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009).

11

section 112.108. *See, e.g.*, *Lall*, 924 S.W.2d at 692; *R Commc'ns*, 875 S.W.2d at 314; *Bandag*, 18 S.W.3d at 304–05.

Before evaluating the constitutional question here, we note the distinction between facial and as-applied challenges, although the dividing line between the two may not always be clearly defined. *See Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 702 & n.7 (Tex. 2014). In a facial challenge, the party challenging the statute claims that the statute always operates unconstitutionally. *Id.* at 702 (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987); *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 (Tex. 1995)). In an as-applied challenge, however, the statute may be generally constitutional but the party challenging it claims that it operates unconstitutionally as to it specifically because of its particular circumstances. *Id.* & n.8 (citing *City of Corpus Christi v. Pub. Util. Comm'n of Tex.*, 51 S.W.3d 231, 240 (Tex. 2001); *Garcia*, 893 S.W.2d at 518 n.16) ("Because [the plaintiff] contends in neither constitutional challenge that the . . . statute always operates unconstitutionally, her challenges are as-applied to her circumstances only."). Here, the posture is unusual—EBS does not contend that section 112.108 itself is unconstitutional, either facially or as applied. The Comptroller contends that the court of appeals has declared section 112.108 unconstitutional in its entirety, rendering the inability-to-pay provision inaccessible. Instead, EBS contends that if the court of appeals is correct and that section 112.108 is invalid and void then Chapter 112, and particularly its prepayment prerequisites, operate unconstitutionality because EBS is left with no mechanism to challenge its tax assessment or recover its partial prepayment of taxes without full prepayment of the tax assessed. As EBS sees it, only under the court of appeals' interpretation of the Tax Code does section 112.108 create an Open Courts

12

violation as applied to EBS, because EBS satisfied all jurisdictional requirements for the inability-to-pay exception and yet is being deprived of access to the courts. This can be interpreted only as an as-applied challenge.

## 2. As Applied to EBS

When we evaluate the constitutionality of a statute, we start with the presumption that statutes enacted by the Legislature comply with both the United States and Texas Constitutions. *See* TEX. GOV'T CODE § 311.021(1); *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 87 (Tex. 2015). In line with this presumption, if a statute is susceptible to two interpretations—one constitutional and the other unconstitutional—then the constitutional interpretation will prevail. *See Key W. Life Ins. Co. v. State Bd. of Ins.*, 350 S.W.2d 839, 849 (Tex. 1961) ("[I]t is the duty of the courts to construe a statute in such a way as to avoid repugnancy to the Constitution."). The party asserting that the statute is unconstitutional bears a "high burden to show unconstitutionality." *Patel*, 469 S.W.3d at 87 (citing *Trapp v. Shell Oil Co.*, 198 S.W.2d 424, 428 (Tex. 1946)).

The Open Courts Provision of the Texas Constitution provides: "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. We have previous held that

> [t]his provision includes at least three separate constitutional guarantees: 1) courts must actually be open and operating; 2) the Legislature cannot impede access to the courts through unreasonable financial barriers; and 3) the Legislature may not abrogate well-established common law causes of action unless the reason for its action outweighs the litigants' constitutional right of redress.

13

*Lall*, 924 S.W.2d at 689 (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 448). The second guarantee is at issue here as we consider whether EBS is entitled to rely on section 112.108's inability-to-pay exception.

Although the prepayment prerequisites in Chapter 112 have not been directly challenged in this case, we note that this Court has, in previous cases, addressed statutes that condition judicial review upon prepayment. In striking section 112.108's ban on declaratory relief as a means of remedying the Open Courts problem in *R Communications*, we stated that "[w]e do not mandate an unconditional right to declaratory relief, but only direct that [taxpayers have] some constitutionally adequate means of judicial review not dependent on prior payment be[ing] provided." 875 S.W.2d at 318 n.8. A statute that "requir[es] taxpayers to pay any portion of the disputed amount as a condition for judicial review" will undermine this interest. *Lall*, 924 S.W.2d at 692. Our decisions have historically addressed facial challenges to statutes conditioning judicial review on an unreasonable financial barrier rather than as-applied challenges in which taxpayers seek relief from a financial barrier. *See Lall*, 924 S.W.2d at 688; *R Commc'ns*, 875 S.W.2d at 318–19; *Tex. Ass'n of Bus.*, 852 S.W.2d at 443. Nevertheless, the principles we have discussed are relevant here.

While section 112.108's predecessor was in effect, this Court considered the constitutionality of a forfeiture provision requiring full prepayment of fees in *Texas Association of Business v. Texas Air Control Board*. 852 S.W.2d at 443 (discussing prepayment and forfeiture provisions in TEX. HEALTH & SAFETY CODE §§ 361.252, 382.089 and TEX. WATER CODE § 26.136). The plaintiff association on behalf of its members brought a declaratory judgment suit challenging the constitutionality of statutes that conditioned judicial review of civil penalties levied by two state

14

agencies on prepayment or posting of a supersedeas bond. *Id.* This Court concluded that the "forfeiture provision [was] an unreasonable restriction on access to the courts" and thus was unconstitutional on its face even if some of the taxpayers would have been able to afford full prepayment. *Id.* at 450 & n.18. In essence, the Court rejected the argument that the ability to afford the tax assessment is the hallmark of making a full prepayment prerequisite reasonable. *See id.* at 450. This is because whether prepayment creates an unreasonable financial barrier is determined not by the reasonableness of the amount owed but by the reasonableness of the loss of judicial review—requiring prepayment to seek judicial review can still be unreasonable if a taxpayer can afford it. *See id.* & n.18 ("The guarantee of constitutional rights should not depend on the balance in one's bank account."). The statutes at issue provided no alternative means for a taxpayer to seek judicial review. *Id.* Thus, because the statute conditioned judicial review on payment without any relief or exception to that condition, and the taxpayer had no constitutionally adequate alternative, we declared it unconstitutional. *See id.* at 449–50; *see also R Commc'ns*, 875 S.W.2d at 318 n.8.

Against the backdrop of *Texas Association of Business*, this Court later considered section 112.108's predecessor, which lacked an inability-to-pay exception. *R Commc'ns*, 875 S.W.2d at 318. As the court of appeals discussed, in *R Communications* this Court declared the original version of section 112.108 unconstitutional, holding that the statutory scheme governing judicial review of a tax assessment impeded taxpayers' ability to access courts. 549 S.W.3d at 854–55 (discussing *R Commc'ns*, 875 S.W.2d at 318). It was the combination of the prepayment prerequisite, ban on declaratory relief in section 112.108, and inadequacy of awaiting the Comptroller's filing of a collection suit that led this Court to conclude that taxpayers were

15

financially restricted in their ability to get to court. *R Commc'ns*, 875 S.W.2d at 317–19 (holding section 112.108 unconstitutional and void "insofar as it would preclude a taxpayer from obtaining judicial review of its tax liability by means of a declaratory action"). By invalidating section 112.108's predecessor and granting the taxpayer the ability to seek declaratory relief, *R Communications* sought to provide a constitutionally adequate means of judicial review not conditioned on prepayment. *See id.* & n.8 (stating that the Open Courts Provision does not guarantee the right to seek declaratory relief per se, but that declaratory relief provided a constitutionally adequate means of judicial review in that instance). Thus, although the Court in *R Communications* implied that there might have been other ways to ensure that taxpayers would have access to judicial review of tax assessments without unreasonable restraint, the Court focused solely on restoring the right to seek declaratory relief—a right the Legislature again revoked when it enacted the amended version of section 112.108.

After the Legislature amended section 112.108 to include the inability-to-pay exception, this Court decided *Central Appraisal District of Rockwall County v. Lall*, which addressed the constitutionality of a statutory scheme with provisions similar to section 112.108 as amended. *See* 924 S.W.2d at 688 (analyzing TEX. TAX CODE § 42.08). Under the statutory scheme at issue in that case, a taxpayer would forfeit the right to judicial review of its ad valorem tax assessment by failing to prepay taxes, but the statute allowed a taxpayer to avoid the prepayment prerequisites if it qualified for an inability-to-pay exception. *Id.* In that consolidated case, separate plaintiff taxpayers brought protest suits to challenge the appraisal review board's denial of their property tax exemptions. *Id.* But the taxpayers did not make their required prepayments—the jurisdictional

16

requirement—or allege inability to pay, instead challenging the constitutionality of the statutory scheme. *Id.* Without focusing on the inability-to-pay exception, as the taxpayers did not seek to invoke the trial court's jurisdiction through the exception, this Court declared unconstitutional on its face the portion of the statute requiring prepayment of contested taxes as a condition of judicial review. *Id.* at 692. But this Court also held that conditioning judicial review on prepayment of an uncontested portion of a tax assessment is not unconstitutional. *Id.* at 692–93. The Court concluded that "it is reasonable to require a solvent taxpayer to pay the taxes which are admittedly due before challenging the disputed portion." *Id.* at 690. This practice was in line with "the common law rule that a person judicially challenging a property tax must tender at least the amount conceded to be owed in order to maintain the action." *Id.* (citing *State v. Hoffman*, 201 S.W. 653, 654 (Tex. 1918); *Zglinski v. Hackett*, 552 S.W.2d 933, 936 (Tex. Civ. App.—Austin 1977, writ ref'd n.r.e.)). Thus, the taxpayer had a constitutionally adequate means of judicial review of the contested assessment because that portion of the statute only required that the taxpayer pay what it admitted it owed. *See id.*

However, this Court declared unconstitutional the statutory provision that conditioned judicial review on the payment of the contested portion of the assessment, despite an inability-to-pay provision in the statute. *Id.* In contrast to the statutes in *Texas Association of Business* and *R Communications*, which required full prepayment of the contested portion of the assessment to gain access to the courts, the portion of the statute this Court declared unconstitutional in *Lall* did not require payment of "the entire disputed amount." *See id.* at 690, 692; *see also R Commc'ns*, 875 S.W.2d at 314–15; *Tex. Ass'n of Bus.*, 852 S.W.2d at 443. But we held that distinction did not save

17

the prepayment prerequisite in the property tax statute. *See Lall*, 924 S.W.2d at 692. Instead, "requiring taxpayers to pay any portion of the disputed amount as a condition for judicial review for the assessment violates the guarantee of open courts." *Id.* We declared that such a statute, which conditions the ability to seek judicial review on the prepayment of any portion of the contested tax assessment, "facially violates the [O]pen [C]ourts [P]rovision." *Id.* at 693. In other words, a taxpayer's right to open courts is violated when its only means of access to courts is by relying on a statute that requires prepayment of the contested portion of a tax assessment.[3]

Thus, in the context of this precedent, our question today is whether section 112.108 as amended, which gives trial courts discretion to grant certain taxpayers relief from the Tax Code's prepayment prerequisites, *see* TEX. TAX CODE §§ 112.001, .101, .051, .108, is unconstitutional as applied to EBS given our suggestion in *Lall* that an inability-to-pay exception did not cure an unconstitutional prepayment prerequisite. Stated differently, does section 112.108 as amended, which may provide EBS an avenue to access the courts that is not conditioned on prepayment, violate the constitution's guarantee of access to courts without unreasonable financial barriers?

In holding that EBS's failure to make full prepayment deprived the trial court of jurisdiction, the court of appeals relied on its opinion in *Bandag*, which followed *Lall*, to hold that the current version of section 112.108—with the inability-to-pay-exception and ban on declaratory relief—was

---

[3] We additionally stated in *Lall* that "[b]ecause [the prepayment] provision imposes an unreasonable financial barrier to court access . . . it violates the [O]pen [C]ourts [P]rovision . . . regardless of any [inability-to-pay provision]." 924 S.W.2d at 692 (citations omitted). The inability-to-pay provision was irrelevant in *Lall* because the taxpayers in *Lall* did not rely on it. *See id.* ("[T]he taxpayers in these consolidated cases do not contend that they were financially unable to make the payment required."). Here, however, even though we said in *Lall* that the prepayment prerequisites were unconstitutional despite the inability-to-pay exception, EBS claims that it is actually unable to prepay and thus—unlike the taxpayers in *Lall*—seeks to rely on the inability exception rather than challenge the prepayment prerequisites themselves.

18

unconstitutional. 549 S.W.3d at 856–57, 863–64 (discussing *Bandag*, 18 S.W.3d at 298, 303–04). "[R]eaffirm[ing] [its] prior holding that section 112.108 is invalid," the court concluded that EBS could not rely on the inability-to-pay exception as a waiver of the State's sovereign immunity. *See id.* at 856, 863 & n.7 (citing *Bandag*, 18 S.W.3d at 304–05). But neither *Bandag* nor any of the cases from this Court on which *Bandag* relied—*Lall*, *Texas Association of Business*, or *R Communications*—addressed an as-applied challenge in which a taxpayer actually attempted to avail itself of the benefits of an inability-to-pay exception to access the courts. *Lall*, 924 S.W.2d at 692; *R Commc'ns*, 875 S.W.2d at 315–16; *Tex. Ass'n of Bus.*, 852 S.W.2d at 450; *Bandag*, 18 S.W.3d at 298, 303–04; *see also EBS Sols. Inc.*, 549 S.W.3d at 854–59 (discussing *R Communications*, *Lall*, and *Bandag*, and referencing *Texas Association of Business*). *But see Richmont Aviation*, 2013 WL 5272834, at *2–3 (raising issue of section 112.108's inability-to-pay exception and remanding injunction claim for further proceedings). We cannot ignore this distinction. A facial challenge brought by a taxpayer who can pay but seeks to invalidate the prepayment prerequisites themselves is different from an as-applied challenge involving a taxpayer who seeks to avail itself of the inability-to-pay exception that the Legislature enacted to provide it access to the courts rather than challenge the prepayment prerequisites as an unreasonable financial barrier of access to courts.

Because of the unique posture of this case—a taxpayer prepaid some of the taxes due but is also attempting to avail itself of the inability-to-pay exception to seek an injunction and return of tax monies paid, rather than seeking to have the prepayment scheme declared unconstitutional—competing interpretations of "inability to pay" become relevant. The importance

19

of the meaning of "inability to pay" in this context is highlighted by the legal landscape that now exists after *R Communications* reinstated a taxpayer's ability to challenge its tax assessment through a declaratory judgment action, curing the original section 112.108's Open Courts defect. 875 S.W.2d at 315–16. In response to *R Communications*, the Legislature amended section 112.108 to again remove a taxpayer's ability to seek declaratory relief but provided a different avenue for some taxpayers to access the courts to challenge their tax assessment—the inability-to-pay exception. TEX. TAX CODE §112.108. Later, *Bandag* relied on *Lall* to hold section 112.108 as amended retained an Open Courts problem. *Lall*, 924 S.W.2d at 692; *Bandag*, 18 S.W.3d at 303–04. The court of appeals in this case then held that the inability-to-pay provision was not a valid waiver of sovereign immunity because in *Bandag* the court had concluded that section 112.108 was unconstitutional and that the statute in its entirety violated the Open Courts Provision. 549 S.W.3d at 858–59 (citing *Bandag*, 18 S.W.3d at 303–04). Given this legal landscape, to determine whether section 112.108 as amended operates unconstitutionally as applied to EBS, we must consider the meaning of "inability to pay" within the context of Chapter 112.

EBS does not claim that it is unable to pay any of the taxes allegedly owed; in fact, EBS paid $150,000 of the assessed taxes. EBS claims that it cannot afford to pay *all* of the taxes allegedly owed, and that requiring prepayment of the entire sum of tax, penalties, and interest assessed would unreasonably restrain its access to the courts. If we can interpret "inability to pay" in a reasonable manner that gives effect to the Legislature's attempt to cure the constitutional defect consistent with our precedent regarding open courts, then we must do so. *See Barshop v. Medina Cty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 629 (Tex. 1996) (citations omitted) ("When possible,

20

we are to interpret legislative enactments in a manner to avoid constitutional infirmities."); *Tex. State Bd. of Barber Exam'rs v. Beaumont Barber Coll., Inc.*, 454 S.W.2d 729, 732 (Tex. 1970) (citations omitted) ("Legislative enactments will not be held unconstitutional and invalid unless it is absolutely necessary to so hold.").

The Legislature left "inability to pay" undefined. EBS argues this term means inability to pay any part of the tax, penalties, and interest assessed, which would allow a taxpayer to avail itself of the exception when it pays part of the sum due but cannot pay the remainder. In contrast, the Comptroller suggests that Chapter 112 is clear and partial prepayment is prohibited. *See* TEX. TAX CODE §§ 112.051, .101, .151. When terms are undefined, we will use the plain and ordinary meaning of the term and interpret it within the context of the statute. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex. 2011). To ascertain this plain and ordinary meaning, we start with dictionaries and "then consider the term's usage in other statutes, court decisions, and similar authorities." *Tex. State Bd. of Exam'rs of Marriage & Family Therapists*, 511 S.W.3d at 35. "Inability" is defined as "the quality or state of being unable" such as a "lack of sufficient power, strength, resources, or capacity." WEBSTER'S THIRD NEW INT'L DICTIONARY (2002). And what the taxpayer is unable to do—or lacks sufficient resources or capacity to do—under the statute, is "pay the tax, penalties, and interest due." TEX. TAX CODE § 112.108. However, the statute does not specify whether a taxpayer may file an oath if it is unable to pay *all* or only *any* of "the tax, penalties, and interest due." *Id.* Reading it to mean *all*, a taxpayer could file an inability-to-pay affidavit if it lacks resources to make a single payment for the entire sum of assessed tax, penalties, and interest. Reading the statute to mean *any*, a taxpayer could file an inability-to-pay affidavit only

21

if the taxpayer could afford to pay none of the sum assessed. Thus, under a broad reading of the term—the former (*all*)—a taxpayer would be excused from the prepayment prerequisite if it could afford to pay some part of the amount assessed, but under a narrow reading of the term—the latter (*any*)—a taxpayer would have to satisfy the full prepayment prerequisite if it could afford to pay some part of the amount assessed.

Normally, when a term within a statute is susceptible to either a broad or a narrow meaning, we will presume that the broader meaning of the term is intended, being sensitive to the term's context in the statute. *See Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 327 (Tex. 2017) (citation omitted) ("If an undefined word used in a statute has multiple and broad definitions, we presume—unless there is clear statutory language to the contrary—that the Legislature intended to have equally broad applicability."). More importantly, when two reasonable interpretations of a statute exist, including one which would lead a court to invalidate the statute as unconstitutional, courts should apply the constitutional meaning. *See Key W. Life Ins. Co.*, 350 S.W.2d at 849. The fact that the Tax Code otherwise requires full prepayment of the entire sum assessed, *see* TEX. TAX CODE §§ 112.051, .101(a), .151., and section 112.108's exception grants taxpayers relief from that full prepayment prerequisite supports a broad reading of "inability to pay." Section 112.108's use of "the tax, penalties, and interest due," together, likewise supports a broad reading, as it indicates that the exception applies to a taxpayer who cannot make the full payment encompassing the "tax, penalties, and interest" assessed. *Id.* § 112.108. Nothing in the statute indicates that we must read "inability to pay" narrowly. *See State v. Dyer*, 200 S.W.2d 813, 815 (1947) (citation omitted) ("A too literal construction of a statute, which would prevent the

22

enforcement of it according to its intent, should be avoided."). And given the language of the exception, we believe it would be nonsensical to read "inability to pay" to mean that a taxpayer who can afford to pay some part of the sum assessed cannot access the courts unless it pays the entire sum assessed. *See Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 54 (Tex. 2014); *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex. 1991).

Further, interpreting "inability to pay" narrowly to apply only to those who could not afford to pay any of the tax, penalties, and interest assessed would preclude almost all taxpayers from receiving its benefit. Here, a narrow interpretation of "inability to pay" would deprive a taxpayer like EBS, who could pay some but not all of the sum assessed, a "constitutionality adequate means of judicial review not dependent on prior payment." *R Commc'ns*, 875 S.W.2d at 318 n.8. Without the availability of the inability-to-pay exception, EBS and similarly situated taxpayers would have to rely on the normal procedures that make full prepayment a prerequisite to judicial review, which we have previously said is a violation of the Open Courts Provision. *See* TEX. TAX CODE §§ 112.051, .101, .151; *Tex. Ass'n of Bus.*, 852 S.W.2d at 450. And, like its predecessor statute that we declared unconstitutional in *R Communications*, those same taxpayers could not seek declaratory relief under section 112.108 as amended. *See* TEX. TAX CODE § 112.108; *R Commc'ns*, 875 S.W.2d at 318–19. Thus, similar to *Texas Association of Business*, the narrow interpretation would condition judicial review of a tax assessment on prepayment of the full amount for those taxpayers who can afford to prepay some but not all of their tax assessment. *See* 852 S.W.2d at 449–50. Such a condition would be more severe than the statute we held unconstitutional in *Lall*, which required partial payment of a portion of the disputed amount of taxes, and would fail to provide a

23

"constitutionally adequate means of judicial review not dependent on prior payment be[ing] provided." *R Commc'ns*, 875 S.W.2d at 318 n.8; *see* TEX. TAX CODE § 112.108; *Lall*, 924 S.W.2d at 692.

However, the solution we employed in *R Communications*—making declaratory relief available to a taxpayer who seeks to challenge its tax assessment without full prepayment of all assessed tax, penalties, and interest—is not the only solution that can provide a "constitutionality adequate means of judicial review not dependent on prior payment be[ing] provided." *R Commc'ns*, 875 S.W.2d at 318 n.8. Interpreting "inability to pay" broadly achieves the same objective, as applied to taxpayers who seek to challenge their tax assessment but lack the resources for full prepayment—that is, for that category of taxpayers who qualify under the inability-to-pay exception and seek to rely on the exception. This interpretation comports with our understanding of "inability to pay" as used in other statutes. *See Tex. State Bd. of Exam'rs of Marriage & Family Therapists*, 511 S.W.3d at 35 (ascertaining the meaning of a statute by considering the statute's term in a variety of sources including other statutes and court decisions). In *Griffin Industries, Inc. v. Honorable Thirteenth Court of Appeals*, 934 S.W.2d 349 (Tex. 1996), we considered whether the trial court abused its discretion when it sustained a contest to an inability-to-pay affidavit. *See id.* There, the plaintiff filed an oath of inability to pay costs with her appeal after the trial court entered a directed verdict in favor of the defendant, Griffin Industries. *See id.* at 350. In holding that the trial court abused its discretion by granting the defendant's contest to her inability-to-pay affidavit, this Court stated that a party makes a prima facie case for inability to pay the costs owed "if [it] really wanted to and made a good-faith effort to do so." *Id.* at 351 (quoting *Allred v. Lowry*, 597 S.W.2d 353, 355

24

(Tex. 1980)). The Court held that the defendant's evidence did not negate the plaintiff's evidence, which was statutorily recognized to make out a prima facie case for inability to pay, because it was pointless, irrelevant, presumptuous, or would lead to an Open Courts problem. *See id.* at 351–54. Similarly, in *Goffney v. Lowry*, 554 S.W.2d 157 (Tex. 1977), we rejected a trial court's findings that a relator could have attempted to sell, mortgage, or pawn a television or stereo to assist in paying court costs when rejecting her inability-to-pay affidavit. *See id.* at 159. Additionally, we disagreed that the relator should have accepted a loan from her cousin or sought out a loan from a legal foundation to assist in affording the court costs. *See id.* at 159–60. Thus, it is not the party's ability to obtain the costs by any means necessary that determines whether it is unable to pay, but rather whether the party can afford to pay all the costs presently owed "if [it] really wanted to [pay the costs] and made a good-faith effort to do so." *Griffin Indust.*, 934 S.W.2d at 351. Consistent with our recognition that a party meets the inability-to-pay qualification if it cannot pay the full sum of all monies owed, we will apply the same approach here.

We conclude that section 112.108 as amended allows EBS to seek access to the courts through an oath of inability to pay if it is unable to pay some part of the total sum of tax, penalties, and interest assessed. Having concluded that nothing in section 112.108 prohibits partial prepayment, or precludes an oath of inability to make a partial prepayment, we hold that EBS could seek access to the courts through section 112.108's inability-to-pay exception by filing an oath of inability to pay the unpaid portion of tax, penalties, and interest assessed.[4] Thus, section 112.108

---

[4] This is not to say that a taxpayer must *always* make a partial prepayment before relying on the inability-to-pay exception. Rather, the statute requires that after a taxpayer shows that it cannot afford full prepayment, the trial court decides whether mandating full prepayment would create an unreasonable restraint on a taxpayer's access to court. *See*

25

as amended is constitutional as applied to EBS and allows it to seek judicial review of its tax assessment without full prepayment of taxes, so long as it satisfies the jurisdictional requirements of the inability-to-pay exception.[5] *See R Commc'ns*, 875 S.W.2d at 318 n.8.

## C. Waiver of Sovereign Immunity

Under section 112.108, a taxpayer is excused from the prepayment prerequisites otherwise required to waive the State's sovereign immunity only if: (1) the taxpayer files an oath of inability to pay the tax, penalties, and interest due; (2) a hearing is set and notice provided; (3) the trial court conducts a hearing; and (4) the trial court finds that "prepayment would constitute an unreasonable restraint on the party's right of access to the courts." TEX. TAX CODE § 112.108.

In the trial court, EBS properly filed its oath of inability to pay describing the effect prepayment would have on EBS. *See id.* EBS set its oath of inability to pay for hearing and noticed a hearing. *See id.* The trial court conducted a hearing, at which the Comptroller appeared. *See id.* The Comptroller did not contest EBS's allegations of inability to pay, nor did the Comptroller challenge the prepayment prerequisites themselves. The trial court made the necessary finding to excuse EBS from the full prepayment prerequisite—"such prepayment would constitute an unreasonable restraint on the party's right of access to the courts." *Id.* As such, the record supports that the jurisdictional requirements of section 112.108's inability-to-pay exception were satisfied.

---

TEX. TAX CODE § 112.108.

[5] To be clear, our opinion is limited to the narrow issue presented in this case—EBS's ability to rely on the inability-to-pay exception in section 112.108 as amended to access the courts to pursue an injunction and seek to recover tax monies prepaid in protest. We express no opinion on the constitutionality of section 112.108 as amended, or Chapter 112's prepayment prerequisites, as it applies to taxpayers who do not seek access to the courts through the inability-to-pay exception, as that issue is not before us today.

And when undisputed jurisdictional facts establish that the State has waived sovereign immunity, a trial court possesses jurisdiction. *See Miranda*, 133 S.W.3d at 227.

Admitting that it had an opportunity but did not contest EBS's claim of inability to pay during the hearing in the trial court, the Comptroller asks that we nevertheless remand this case to the trial court to give it another opportunity to challenge the jurisdictional facts. The Comptroller argues that because sovereign immunity is ultimately a question about the trial court's subject matter jurisdiction and subject matter jurisdiction can always be challenged, *see id.*, then it is entitled to a remand for a hearing that would allow it to challenge whether sufficient jurisdictional facts exist under section 112.108. The Comptroller is correct that section 112.108 implicates a court's jurisdiction and that the trial court must base its decision on a factual assessment of the effect full prepayment would have on the taxpayer. But the statute provides an opportunity to contest those jurisdictional facts during a required hearing. *See* TEX. TAX CODE § 112.108. Specifically, the statute creates a process that affords the Comptroller an opportunity to argue that, on the facts presented, requiring full prepayment would not have the effect required for the taxpayer to qualify for section 112.108's exception. The court can then "consider evidence as necessary to resolve any dispute over those [jurisdictional] facts." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012) (citation omitted).

Here, the Comptroller did not challenge EBS's jurisdictional facts, even as the trial court developed the record as to EBS's ability to qualify for the exception under section 112.108. In both the plea to the jurisdiction and the hearing on EBS's oath of inability to pay, the Comptroller was silent as to whether EBS was actually unable to pay the unpaid tax, penalties, and interest and

27

whether requiring full payment would unreasonably restrain EBS's access to the courts. Instead, the Comptroller argued only that EBS's oath of inability to pay and the hearing on the oath were unnecessary because the statute had been declared unconstitutional by the court of appeals. The Comptroller made a strategic litigation decision not to challenge the substance of EBS's oath, and we reject its arguments in favor of a remand.

The Comptroller urges us to set workable parameters to assist trial courts in determining whether a taxpayer qualifies for the exception—parameters that would presumably require EBS to adduce more evidence to substantiate its claim of inability to pay some part of the tax, penalties, and interest assessed. The Comptroller is concerned that if we rule that section 112.108 can operate constitutionally as applied to a taxpayer who cannot pay the entire sum assessed, then trial courts will allow taxpayers to avoid the statutory prepayment prerequisites simply by filing an oath of inability to pay. In essence, the Comptroller warns that taxpayers are likely to rely pretextually on section 112.108's generosity, especially if a taxpayer can avoid the prepayment prerequisites simply by showing that it cannot afford to pay some small part of the sum assessed.

The Comptroller's argument assumes that the trial court may automatically excuse a taxpayer from the prepayment prerequisites after receiving that taxpayer's oath. But that is not how section 112.108 operates. Section 112.108 as amended can lead to a waiver of sovereign immunity only after the appropriate notice is provided, a hearing occurs, and the trial court determines that the normal prepayment prerequisites "would constitute an unreasonable restraint on a party's right of access to the courts." TEX. TAX CODE § 112.108; *see id.* §§ 112.051, .101. The oath simply leads to the next steps in the process, culminating in the trial court's determination of whether, as to the

28

particular taxpayer at issue, prepayment would pose the unreasonable restriction on access to courts that concerned us in *R Communications*, *Lall*, and *Texas Association of Business*. *See id.* § 112.108; *Lall*, 924 S.W.2d at 692–93; *R Commc'ns*, 875 S.W.2d at 318–19; *Tex. Ass'n of Bus.*, 852 S.W.2d at 449–50. It is not this Court's role to add caveats or parameters to the statute. If we were to interpret the statute so as to add limitations to the availability of the inability-to-pay exceptions, we would undermine the Legislature's intent that trial courts perform a discretionary, gateway function in administering the exception. *See Lutheran Soc. Servs., Inc. v. Meyers*, 460 S.W.2d 887, 890–91 (Tex. 1970) (citing *Davis v. Collins*, 216 S.W.2d 807, 811–12 (Tex. 1949)) (describing the deference trial courts should receive when "statutory provisions are indicative of the wide discretion the Legislature has granted the courts to act").

We hold that EBS satisfied the jurisdictional requirements of section 112.108's inability-to-pay exception, and the State's sovereign immunity was therefore waived as to EBS's injunction and tax protest suit challenging its tax assessment and seeking recovery of taxes prepaid.[6]

## IV. Conclusion

---

[6] In its plea to the jurisdiction, the Comptroller also suggests that sovereign immunity was not waived because EBS originally relied on sections 112.052 and 112.101 in challenging the tax assessment. Because EBS failed to meet the prepayment prerequisite in those statutes, the Comptroller asserts, EBS may not attempt to invoke the trial court's jurisdiction by employing section 112.108 after the litigation process has begun. However, reading sections 112.108, 112.052, and 112.101 together, we see no such limitation. When a taxpayer elects to rely on section 112.108, and the trial court finds that full prepayment would constitute an unreasonable barrier of access to courts, then the trial court "may grant such relief as may be reasonably required by the circumstances." *Id.* § 112.108; *see id.* §§ 112.052, .101(a). Nothing in the text of the statute suggests that the Legislature intended to limit section 112.108 to situations in which the taxpayer invokes the inability-to-pay provision prior to making any payment or seeking judicial review of its tax assessment; rather, the plain language of the inability-to-pay exception indicates that a taxpayer can be excused from the prepayment prerequisite by convincing the trial court, after notice and hearing, that full prepayment would unreasonably restrain the taxpayer's right of access to the courts. *See id.* § 112.108. Although EBS initially relied on sections 112.052 and .101 in filing its lawsuit, nothing in the statute prohibits EBS from later relying on section 112.108 it if was unable to pay the total amount of tax, penalties, and interest allegedly owed.

We hold that section 112.108 of the Texas Tax Code, as applied to EBS, does not create an unreasonable financial barrier of access to the courts, but instead allows EBS to exercise its right to access the courts to seek judicial review of its tax assessment. *See* TEX. CONST. art. I, § 13. Because the inability-to-pay exception applies broadly to any taxpayer who is unable to pay any part of assessed tax, penalties, and interest, allowing for partial payment, section 112.108 as amended allows EBS access to the courts without unreasonable restraint. Further, because EBS does not challenge the constitutionality of the prepayment prerequisites, we need not decide whether those prerequisites are constitutional even with an inability-to-pay exception. By satisfying the jurisdictional requirements of section 112.108 as amended, EBS has invoked the trial court's jurisdiction and can proceed in its injunction and tax protest suit challenging the Comptroller's tax assessment. Because the trial court correctly denied the Comptroller's plea to the jurisdiction, we reverse the judgment of the court of appeals and remand to the trial court for further proceedings.

_____
Paul W. Green
Justice

OPINION DELIVERED: May 8, 2020

30